**Clarence Leon TAYLOR, JR., Appellant,**

v.

**E. Parry BEST, Lt. D.W. Smith, Paul Mills; L.T. Lester, Appellees.**

**No. 83–6447.**

United States Court of Appeals, Fourth Circuit.

Argued Feb. 9, 1984.

Decided Sept. 27, 1984.

Professor Stephen Saltzburg, University of Virginia School of Law, Charlottesville, Va., and Richard Wainstein, Third Year Law Student, University of Virginia School of Law, for appellant.

Richard F. Gorman, III, Asst. Atty. Gen., Richmond, Va. (Gerald L. Baliles, Atty. Gen. of Va., Richmond, Va., on brief), for appellees.

Before SPROUSE and ERVIN, Circuit Judges, and KNAPP,* Senior District Judge.

ERVIN, Circuit Judge:

Clarence Taylor appeals from the district court's order granting the defendants' motion for summary judgment. Taylor, serving a sentence for attempted murder, refused to answer questions put to him by a prison psychologist as part of the Powhatan Reception and Classification Center's routine initial screening. The prison Adjustment Committee found Taylor guilty of hindering a prison employee in the performance of his duties and punished Taylor with fifteen days isolation. Taylor then brought a § 1983 action against Best, the staff psychologist who posed the questions, and Smith, Mills and Lester, members of the Adjustment Committee. Concluding that Taylor had not made out a violation of

the fifth amendment's protection against self-incrimination nor of his right to privacy, the district court granted summary judgment against him. We affirm.

I.

Shortly after his arrival at Powhatan Center, Taylor was interviewed by staff psychologist Best as part of the Center's assessment process. The Center employs this process to determine the appropriate institutional assignment, custody level, and basic program plan for treatment, rehabilitation, and training of new prisoners. According to Taylor, Best questioned him about his crime and conviction. Best prefaced these questions with assurances of confidentiality, but he did not give Taylor *Miranda* warnings nor did anyone extend use immunity. After Taylor refused to answer any questions concerning the crime, Best asked Taylor about his family background. Again Taylor refused to answer.

As a result of his refusals to answer the psychologist's questions, Taylor was charged with "[d]elaying, hindering or interfering with an employee in the performance of his duties", a major offense under the prison disciplinary guidelines. The charge was heard before the institutional Adjustment Committee (consisting of appellees Smith, Lester and Mills). The Adjustment Committee concluded that Taylor's refusal to answer the questions violated prison disciplinary guidelines and sentenced him to fifteen days of isolation.

Taylor argued before the district court that requiring him to answer questions about his crime violated his right against self-incrimination because he was in the process of appealing his conviction. His right to privacy was also violated, Taylor argued, when Best required him to answer questions about his family.

The district court noted that Best swore in his affidavit "that information given by

* Honorable Dennis R. Knapp, Senior District Judge for the Southern District of West Virgin-    ia, sitting by designation.

the inmate during the interview is confidential and that the inmate is informed that the information is confidential and that it is used only for classification purposes." (J.A. 58). The court concluded "that questions about a past criminal conviction, asked for classification purposes with a promise of confidentiality, are not incriminating for purposes of the Fifth Amendment, even though the criminal conviction is still on appeal." (J.A. 59). Addressing the alleged violation of privacy rights, the district court concluded that the requirements of the prison system relating to classification procedures outweighed any privacy interest Taylor might have.

## II.

■ On appeal, the state urges us to hold that Taylor did not have a right to assert the fifth amendment. While we conclude in Part III that Taylor's fifth amendment right did not arise during Best's psychiatric evaluation, we disagree with the state's threshold argument that the conviction and sentencing of a criminal defendant results in the loss of the privilege against self-incrimination. In support of this argument, the state cites *Reina v. United States*, 364 U.S. 507, 513, 81 S.Ct. 260, 264, 5 L.Ed.2d 249 (1960) in which the Court stated that there is "weighty authority" for the proposition that "the ordinary rule is that once a person is convicted of a crime, he no longer has the privilege against self-incrimination as he can no longer be incriminated by his testimony about said crime ...." *See also, United States v. Heldt*, 668 F.2d 1238, 1253 (D.C.Cir.1981) *cert. denied* 456 U.S. 926, 102 S.Ct. 1971, 72 L.Ed.2d 440 (1982) ("It is established law that because a witness has been found guilty of the actions in question he is no longer entitled to claim the privilege of the fifth amendment with respect to those matters....")

Taylor, however, had appealed his conviction at the time he was required to answer questions, a fact the state brushes aside too lightly. Whether or not Taylor's ap-

peal is "dead in the water" as the state asserts is a matter for the state appellate court to determine. We will not undercut Taylor's right to appeal under state law by prematurely assessing the merits of his appeal in a collateral proceeding. If Taylor's conviction were overturned on appeal, post-conviction evidence, if probative and otherwise admissible, might be used against him. *See Hummel v. Commonwealth*, 219 Va. 252, 247 S.E.2d 385 (1978), *cert. denied*, 440 U.S. 935, 99 S.Ct. 1278, 59 L.Ed.2d 492 (1979); *North Carolina v. Pearce*, 395 U.S. 711, 723, 89 S.Ct. 2072, 2079, 23 L.Ed.2d 656 (1969). Therefore, it is possible that post-conviction incriminating evidence could be used against an inmate who had been convicted and sentenced but whose conviction was being appealed. In this situation, the ordinary rule referred to in *Reina* does not apply. *See Mills v. United States*, 281 F.2d 736, 741 (4th Cir.1960). *Cf. Baxter v. Palmigiano*, 425 U.S. 308, 316, 96 S.Ct. 1551, 1557, 47 L.Ed.2d 810 (1976) (right against self-incrimination applies to prison inmates required to testify at disciplinary proceedings).

Equally unavailing is the state's argument that by testifying at his trial, Taylor waived his right to claim the benefits of the fifth amendment. Insofar as Taylor may have waived the right at the first trial with respect to questions concerning the events to which he testified, *see Brown v. United States*, 356 U.S. 148, 78 S.Ct. 622, 2 L.Ed.2d 589 (1958), that waiver may not apply to subsequent proceedings at which Taylor may choose not to testify, and it does not apply to incriminating testimonial statements coerced by the state which could be used at a subsequent criminal proceeding.

## III.

■ We, nevertheless, conclude that in this case the fifth amendment right against self-incrimination did not arise. The fifth amendment, made applicable to the states

by the fourteenth amendment, *Malloy v. Hogan*, 378 U.S. 1, 6, 84 S.Ct. 1489, 1492, 12 L.Ed.2d 653 (1964), commands that "[n]o person ... shall be compelled in any criminal case to be a witness against himself." The Supreme Court has stated that "[t]he essence of this basic constitutional principle is 'the requirement that the state which proposes to convict and punish an individual produce the evidence against him by the independent labor of its officers, not by the simple, cruel expedient of forcing it from his own lips.'" *Estelle v. Smith*, 451 U.S. 454, 462, 101 S.Ct. 1866, 1872, 68 L.Ed.2d 359 (1980) (quoting *Culombe v. Connecticut*, 367 U.S. 568, 581–82, 81 S.Ct. 1860, 1867, 6 L.Ed.2d 1037 (1961)). Thus, the fifth amendment "not only protects the individual against being involuntarily called as a witness against himself in a criminal prosecution but also privileges him not to answer official questions put to him in any other proceeding, civil or criminal, formal or informal, *where the answer might incriminate him in future proceedings.*" *Lefkowitz v. Turley*, 414 U.S. 70, 77, 94 S.Ct. 316, 322, 38 L.Ed.2d 274 (1973) (emphasis added). Rather than basing the availability of the privilege on the type of proceeding in which it was involved, we must base it on "the nature of the statement or admission *and the exposure which it invites.*" *In re Gault*, 387 U.S. 1, 9, 87 S.Ct. 1428, 1434, 18 L.Ed.2d 527 (1967) (emphasis added).[1]

In *Estelle v. Smith*, the Court held that the fifth amendment applied to bar use of a psychiatrist's report at a sentencing hearing when that report was based on incriminating statements made by the defendant during a psychiatric evaluation. In response to the state's contention that Smith's communications were nontestimonial, the Court stated:

Dr. Grigson's prognosis as to future dangerousness rested on statements respondent made, and remarks he omitted, in reciting the details of the crime. The Fifth Amendment privilege, therefore, is directly involved here because the State used as evidence against respondent the substance of his disclosures during the pretrial psychiatric examination.

451 U.S. at 464–65, 101 S.Ct. at 1873–74. However, the Court specifically found that had Dr. Grigson's findings been confined to serving the function of a routine competency exam, "no Fifth Amendment issue would have arisen." 451 U.S. at 465, 101 S.Ct. at 1874. So limited, the answers solicited during a competency exam do not invite incriminating exposure.

For essentially this reason, we have previously held that when a defendant raises the insanity defense, he may be compelled to submit to a sanity examination by the prosecution's psychiatrist without a formal grant of use immunity. *United States v. Albright*, 388 F.2d 719, 724–25 (4th Cir. 1968). In *Albright*, we adopted the rule that "a defendant's right not to incriminate himself is not violated *per se* by requiring him, in an appropriate case, to submit to a mental examination." 388 F.2d at 723. We concluded that the right was not violated in *Albright* because, among other things,

the purpose and result of the examination is not "the cruel, simple expedient of compelling it [incriminating evidence] from his own mouth." To repeat an earlier statement, the purpose of the examination is not to determine whether a defendant did or did not do the criminal acts charged, but whether he possessed the requisite mental capacity to be criminally responsible therefor, if other proof establishes that he did do them. So limited, we find nothing in the examination,

1. Applying these concepts, the Supreme Court has found the privilege applicable in a variety of settings that include police investigations and interrogations, *e.g. Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), prison disciplinary proceedings, *Baxter v. Palmigiano*, 425 U.S. 308, 96 S.Ct. 1551, 47 L.Ed.2d 810 (1976), and administrative proceedings, *Murphy v. Waterfront Commission of New York Harbor*, 378 U.S. 52, 84 S.Ct. 1594, 12 L.Ed.2d 678 (1864), as well as other proceedings. *See generally* Annot. 65 L.Ed.2d 1306 (1980).

over a defendant's objection, to violate a defendant's privilege against self-incrimination.

388 F.2d at 725.[2]

Similarly, in this case the purpose of the examination is not to bypass the adversary system and extract incriminating statements from the defendant to be used against him in a subsequent criminal proceeding. The clear purpose is to evaluate the prisoner so that he may be assigned to the appropriate institution at the appropriate custody level with a basic program plan for treatment that fits his rehabilitation and training needs. In this context, Taylor's right to be free from self-incrimination did not arise. Only if the state attempted to use the evaluation in a subsequent criminal proceeding[3] would Taylor's right to assert the fifth amendment be triggered. *See Estelle v. Smith,* 451 U.S. at 462–65, 101 S.Ct. at 1872–74. At that time, Taylor would be entitled to have the evaluation suppressed if its content were offered against him and if Taylor had not otherwise waived the right. *Id.*

■ Taylor correctly points out that the likelihood of suppression at trial does not negate an investigator's violation of the fifth amendment in the original course of questioning. *Gardner v. Broderick,* 392 U.S. 273, 88 S.Ct. 1913, 20 L.Ed.2d 1082 (1968); *see also Uniformed Sanitation Men Association v. Commissioner of Sanitation,* 392 U.S. 280, 284, 88 S.Ct. 1917, 1919, 20 L.Ed.2d 1089 (1968). However, in this case, as opposed to the cases in *Gard-ner* and *Uniformed Sanitation Men,* there was no violation of the fifth amendment in the first instance. In *Gardner,* the Court held that a state may not discharge a police officer for refusing to waive his fifth amendment right against self-incrimination. The court stated that

the great privilege against self-incrimination does not tolerate the attempt, regardless of its ultimate effectiveness, to coerce a waiver of the immunity it confers on penalty of the loss of employment. *It is clear that petitioner's testimony was demanded before the grand jury in part so that it might be used to prosecute him, and not solely for the purpose of securing an accounting of his performance of his public trust.* If the latter had been the only purpose, there would have been no reason to seek to compel petitioner to waive his immunity.

392 U.S. at 279, 88 S.Ct. at 1916 (emphasis added). In the companion case of *Uniformed Sanitation Men,* the Court implied that no fifth amendment right would have arisen if the state had not sought to compel waiver of immunity.

[I]f New York had demanded that petitioners answer questions specifically, directly, and narrowly relating to the performance of their official duties on pain of dismissal from public employment without requiring relinquishment of the benefits of the constitutional privilege, and if they had refused to do so, this case would be entirely different. In such a case, the employee's right to immunity

---

**2.** Other courts of appeals have held that a routine competency exam does not violate the fifth amendment. *See, e.g., United States v. Cohen,* 530 F.2d 43, 47–48 (5th Cir.) *cert. denied,* 429 U.S. 855, 97 S.Ct. 149, 50 L.Ed.2d 130 (1976); *Karstetter v. Cardwell,* 526 F.2d 1144, (9th Cir. 1975); *United States v. Bohle,* 445 F.2d 54, 66–67 (7th Cir.1971); *United States v. Weiser,* 428 F.2d 932, 936 (2d Cir.1969), *cert. denied,* 402 U.S. 949, 91 S.Ct. 1606, 29 L.Ed.2d 119 (1971); *Pope v. United States,* 372 F.2d 710, 720–21 (8th Cir. 1967) (en banc), vacated and remanded on other grounds, 392 U.S. 651, 88 S.Ct. 2145, 20 L.Ed.2d 1317 (1968).

**3.** In this context, the phrase, "subsequent criminal proceeding" includes a sentencing hearing as in *Estelle* and the analogous parole hearing. Taylor does not contend and the record does not indicate that the substance of Taylor's answers was sought to be used against him in deciding how much of his sentence he should serve. Indeed, Best not only promised confidentiality but stated that the information is "used only by the Department of Corrections for classification purposes." (J.A. 34) Classification purposes do not include consideration for parole, and we decide this case based on that conclusion.

as a result of his compelled testimony would not be at stake.

392 U.S. at 284, 88 S.Ct. at 1920.

*Gardner* and *Uniformed Sanitation Men* are consistent with our holding that Taylor's right against self-incrimination did not arise because the purpose and result of the examination was not to determine whether he did or did not do the criminal acts charged or whether he should be sentenced to a longer term for doing them; rather, it was to determine whether he should be assigned to a particular institution, custody level, and treatment plan. *Cf. United States v. Albright*, 388 F.2d at 725.

### IV.

 Taylor also asserts that his right to privacy was violated by compelling him to answer questions about his family background. The right to privacy, *see Griswold v. Connecticut*, 381 U.S. 479, 85 S.Ct. 1678, 14 L.Ed.2d 510 (1965), includes an "individual interest in avoiding disclosure of personal matters." *Whalen v. Roe*, 429 U.S. 589, 599, 97 S.Ct. 869, 876, 51 L.Ed.2d 64 (1977). However, this privacy interest must be weighed against the public interest in rehabilitation and in the security of prisons. *Compare Nixon v. Administrator of General Services*, 433 U.S. 425, 457, 97 S.Ct. 2777, 2797, 53 L.Ed.2d 867 (1977) *with Bell v. Wolfish*, 441 U.S. 520, 540, 99 S.Ct. 1861, 1874, 60 L.Ed.2d 447 (1979).

In this case, Taylor asserts a privacy interest in keeping his family history from the staff psychologist. This interest, however, is weakened by Best's promise of confidentiality. *See Nixon v. Administrator of General Services*, 433 U.S. at 458, 97 S.Ct. at 2797 (precautions to prevent unwarranted disclosure weaken privacy interest). We believe the compelling public interests in assuring the security of prisons and in effective rehabilitation clearly outweigh Taylor's interest in maintaining the confidentiality of his family background.

### V.

For the foregoing reasons, the judgment of the district court is

AFFIRMED.