**Michael A. SHERMAN, Plaintiff,**

v.

**Deputy JONES, et al., Defendants.**

**No. CIV.A. 02–1801–AM.**

United States District Court,
E.D. Virginia,
Alexandria Division.

April 22, 2003.

Michael A. Sherman, State Farm, VA, for Plaintiff.

N/A, for Defendants.

## MEMORANDUM OPINION

ELLIS, District Judge.

Plaintiff, a Virginia inmate proceeding *pro se,* filed this complaint pursuant to 42 U.S.C. § 1983, alleging that the remaining defendant, Deputy Jones ("Jones"), violated his constitutional right to privacy by revealing his HIV status in the presence of other inmates.[1] By Order dated January 13, 2003, plaintiff was directed to show cause why the complaint should not be dismissed, given that neither the Supreme Court nor the Fourth Circuit Court of Appeals has recognized a constitutional right to privacy with respect to an individual's HIV status. *Sherman v. Jones, et al.,* Civil Action No. 02–1801 (E.D.Va. Jan. 13, 2003). Plaintiff has filed a response, and the matter is now ripe for disposition. For the following reasons, plaintiff's claim

---

1. Initially, plaintiff had also named as a defendant Sheriff Beth Arthur ("Arthur"), alleging that Arthur violated his constitutional right to due process by not resolving a grievance in his favor. By Order dated January 13, 2003, Arthur was dismissed as a defendant pursuant to 28 U.S.C. § 1915A(b)(1) for failure to state a claim upon which relief may be granted. *Sherman v. Jones, et al.,* Civil Action No. 02–1801 (E.D.Va. Jan. 13, 2003) (citing *Adams v. Rice,* 40 F.3d 72 (4th Cir. 1994)).

must be dismissed for failure to state a claim upon which relief may be granted.

## I.

In his complaint, plaintiff alleges that on September 16, 2002, he approached Jones, a deputy sheriff at the Arlington Detention Facility, to ask her about receiving a "snack bag."[2] Plaintiff further alleges that Jones responded by stating loudly, "Get away from the desk," and "I'm not scared of you or your AIDS." Plaintiff also alleges that Jones' loud statement was overheard by other inmates in the vicinity at the time. Plaintiff's claim is that by making public plaintiff's HIV status, Jones violated plaintiff's constitutional right to privacy and is accordingly liable to plaintiff under § 1983.

## II.

Relief is appropriate under 42 U.S.C. § 1983 when a state actor violates either a constitutional right or a federal law, thereby causing harm to a plaintiff. *See Chapman v. Houston Welfare Rights Org.*, 441 U.S. 600, 660 n. 30, 99 S.Ct. 1905, 60 L.Ed.2d 508 (1979) (White, J., concurring) ("[Section 1983] in the Revised Statutes of 1874 was enlarged to provide protection for rights, privileges, or immunities secured by federal law as well [as those secured by the Constitution].") (quoting *Mitchum v. Foster*, 407 U.S. 225, 239 n. 30, 92 S.Ct. 2151, 32 L.Ed.2d 705 (1972)). The instant complaint, however, alleges only a violation of a putative constitutional right to privacy. Accordingly, the sole question presented is whether plaintiff has a constitutional right to privacy with respect to his HIV status that was violated by Jones' conduct.

## III.

In reviewing a complaint pursuant to 28 U.S.C. § 1915A, a court should dismiss a prisoner complaint that is frivolous, malicious, or fails to state a claim upon which relief can be granted. 28 U.S.C. § 1915A(b)(1). Whether a complaint states a claim upon which relief can be granted is determined by "the familiar standard for a motion to dismiss under Fed.R.Civ.P. 12(b)(6)." *Sumner v. Tucker*, 9 F.Supp.2d 641, 642 (E.D.Va.1998). Under this standard, the alleged facts are presumed true, and the complaint may be dismissed only when "it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." *Hishon v. King & Spalding*, 467 U.S. 69, 73, 104 S.Ct. 2229, 81 L.Ed.2d 59 (1984). Here, it is clear that, even accepting plaintiff's factual allegations in the complaint as true and viewing those allegations in a light most favorable to him, his claim nonetheless fails as a matter of law.

The Supreme Court has never proclaimed a "general constitutional right to privacy." *Whalen v. Roe*, 429 U.S. 589, 607–08, 97 S.Ct. 869, 51 L.Ed.2d 64 (1977) (Stewart, J., concurring) (quoting *Katz v. United States*, 389 U.S. 347, 350, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967)).[3] It is also true that the Constitution nowhere explicitly mentions such a fundamental privacy right. Yet, the Supreme Court, to be sure, has found a constitutional right to privacy lurking in various amendments to the Con-

---

**2.** According to Arlington Detention Facility records, the plaintiff had been "persistent[ly] badgering [Jones] regarding [his] snack bag."

**3.** The *Katz* opinion concerned the absence of a general constitutional privacy right in the Fourth Amendment only. *Katz*, 389 U.S. at 350, 88 S.Ct. 507. In his concurring opinion

in *Whalen*, Justice Stewart applied the principle more broadly, also noting that the Court in *Griswold v. Connecticut*, 381 U.S. 479, 85 S.Ct. 1678, 14 L.Ed.2d 510 (1965), did "not recognize a general interest in freedom from disclosure of private information." *Whalen*, 429 U.S. at 609, 97 S.Ct. 869 (Stewart, J., concurring).

stitution.[4] And, in this respect, it is clear that the Supreme Court has extended that constitutional right to certain "zones of privacy," including private decisions involving marriage,[5] procreation,[6] contraception,[7] abortion,[8] and child raising and education.[9] But significantly, the Supreme Court has carefully avoided creating a broad, fundamental privacy right, noting that the matter of general individual privacy rights is an issue that should be "left largely to the law of the individual States." *Katz*, 389 U.S. at 351, 88 S.Ct. 507.

Consistent with this principle, there is no Supreme Court declaration that an individual's confidential medical information falls within a constitutionally protected "zone of privacy." Particularly instructive in this regard is *Whalen v. Roe*, 429 U.S. 589, 97 S.Ct. 869, 51 L.Ed.2d 64 (1977). There, doctors and patients challenged the constitutionality of a New York statute that required disclosure to the state of the names and addresses of individuals who received prescriptions for Schedule II drugs. *Id.* at 591–95, 97 S.Ct. 869. Plaintiffs in *Whalen* argued that the patients had a constitutional right to privacy in their medical information and that the law "invade[d] a constitutionally protected 'zone of privacy.'" *Id.* at 598, 97 S.Ct. 869. The three-judge district court had held that "the doctor-patient relationship intrudes on one of the zones of privacy accorded constitutional protection," and that the statute encroached on that zone. *Roe v. Ingraham*, 403 F.Supp. 931, 936 (S.D.N.Y.1975).[10] In reversing, Justice Stevens elected not to adopt this principle, choosing instead to hold simply that "neither the immediate nor the threatened impact of the patient-identification requirements in the [state law] . . . is sufficient to constitute an invasion of any right or liberty protected by the Fourteenth Amendment." *Id.* at 603–604. Thus, Justice Stevens, speaking for the Court, declined the

**4.** *See Roe v. Wade,* 410 U.S. 113, 153, 93 S.Ct. 705, 35 L.Ed.2d 147 (1973) (finding right to privacy is "founded in the Fourteenth Amendment's concept of personal liberty and restrictions upon state action"); *Terry v. Ohio,* 392 U.S. 1, 9, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968) (holding the Fourth Amendment allows individuals "to be free from unreasonable governmental intrusion"); *Griswold,* 381 U.S. at 484–485, 85 S.Ct. 1678 (holding assorted rights of privacy are created by the Bill of Rights' various penumbras).

**5.** *See Loving v. Virginia,* 388 U.S. 1, 12, 87 S.Ct. 1817, 18 L.Ed.2d 1010 (1967) (finding the zone of privacy includes the freedom to marry in the Equal Protection Clause and the Due Process Clause of the Fourteenth Amendment).

**6.** *See Skinner v. Oklahoma,* 316 U.S. 535, 541–42, 62 S.Ct. 1110, 86 L.Ed. 1655 (1942) (finding the zone of privacy includes freedom from forced sterilization in the Equal Protection Clause of the Fourteenth Amendment).

**7.** *See Eisenstadt v. Baird,* 405 U.S. 438, 453–54, 92 S.Ct. 1029, 31 L.Ed.2d 349 (1972) (finding the zone of privacy includes the free-dom to use contraception in the Equal Protection Clause of the Fourteenth Amendment).

**8.** *See Roe v. Wade,* 410 U.S. at 154, 93 S.Ct. 705 (finding the zone of privacy includes the freedom to decide on an abortion in the Due Process Clause of the Fourteenth Amendment).

**9.** *See Pierce v. Society of Sisters,* 268 U.S. 510, 535, 45 S.Ct. 571, 69 L.Ed. 1070 (1925) (finding the zone of privacy includes the freedom not to attend state public schools in the Due Process Clause of the Fourteenth Amendment).

**10.** Defendants did not appeal the district court's decision to the Second Circuit Court of Appeals. Rather, the New York Commissioner of Health filed with the Supreme Court an application for a stay of the judgment, which was denied. *Whalen v. Roe,* 423 U.S. 1313, 96 S.Ct. 164, 46 L.Ed.2d 18 (1975). Thereafter, the Supreme Court noted its jurisdiction in the case. *Whalen v. Roe,* 424 U.S. 907, 96 S.Ct. 1100, 47 L.Ed.2d 310 (1976).

opportunity to label any privacy interest in medical records as a fundamental constitutional right, focusing instead on the fact that the New York statute would not likely result in the public dissemination of patients' medical information. *Id.* at 600–02. It is clear, however, a different result would have obtained had the Supreme Court found a fundamental constitutional right to privacy in an individual's medical information, for in that circumstance, the statute would have contravened that right because it required the release of presumably protected personal medical information. Thus, *Whalen* points persuasively to the conclusion that there is no general fundamental constitutional right to privacy in personal medical information.

Authority in this circuit is to the same effect. Thus, the Fourth Circuit has also declined invitations to declare a constitutional right to privacy in one's personal medical information. *See Watson v. Lowcountry Red Cross,* 974 F.2d 482, 487–89 n. 9 (4th Cir.1992); *Taylor v. Best,* 746 F.2d 220, 225 (4th Cir.1984). In *Taylor,* for example, an inmate plaintiff alleged that he had a constitutional right to privacy in his family medical history and thus did not have to divulge that medical history to the prison psychologist. *See id.* at 221. On these facts, Judge Ervin, writing for a unanimous panel, held that any "privacy interest" plaintiff might enjoy in his medical history was outweighed by "compelling public interests in assuring the security of prisons and in effective rehabilitation." *Id.* at 225. Significantly, the opinion neither stated nor implied that a privacy right of constitutional stature was at issue;

rather, the opinion carefully used the broader, nonconstitutional term "privacy interest" to refer to what was in issue. *Id.*

Like the Supreme Court in *Whalen,* the Fourth Circuit panel in *Taylor* declined to find a fundamental constitutional right to privacy in personal medical information. Instead, *Taylor* like *Whalen* focused on the impact of the disclosure, noting that the personal medical information in question would not be widely disseminated. *Id.* ("This [privacy] interest ... is weakened by [the psychologist's] promise of confidentiality."). Thus, like *Whalen,* the *Taylor* case points away from recognizing a fundamental constitutional right of privacy in medical records. Instead, it acknowledges only a "privacy interest," one that may be overcome by the public interest in secure prisons and inmate rehabilitation. *Id.* at 225.[11]

In addition, a district court case essentially similar to this case squarely addresses the question here in issue. *See Adams v. Drew,* 906 F.Supp. 1050 (E.D.Va.1995). There, a pretrial detainee alleged that when he and the other inmates lined up for the distribution of medication by the medical staff, their medical charts were in plain sight, thereby exposing to other inmates the fact that plaintiff was receiving AZT, a drug associated with HIV. *Id.* at 1054. The district court explained that, "[w]hether or not disclosure of personal information is protected, no controlling authority exists which extends [constitutional protection] to medical information." *Id.* at 1056. In these circumstances, the district court was properly reluctant to "discover new constitutional rights regarding privacy,"

11. A second Fourth Circuit opinion, *Watson,* also declines to reach and decide whether any privacy right in personal medical information is of constitutional stature. In *Watson,* the Fourth Circuit was presented with the question of whether revealing a blood donor's medical information to a court and a court-appointed lawyer would implicated any privacy rights of the donor. *Watson,* 974 F.2d at 487. Noting that the possibility for public disclosure was remote, the panel found no violation and left "for another day the question of whether court-approved disclosure to a larger universe might violate the donor's privacy rights." *Id.* at 488 n. 9.

especially "given the lack of clear direction from the Supreme Court or Fourth Circuit." *Id.* at 1057 (internal quotations omitted).

In the instant case, plaintiff is alleging that Jones violated his constitutional right to privacy by stating within earshot of other inmates that plaintiff has HIV. Yet, it appears that viewing the facts in the light most favorable to plaintiff, plaintiff is claiming the violation of a privacy right that has not been recognized by either the Supreme Court or the Fourth Circuit. Nor does the privacy right claimed by plaintiff fall within the ambit of any of the various "zones of privacy" recognized by the Supreme Court. Accordingly, it follows that defendant's conduct did not violate any constitutional right. Hence, this complaint must be dismissed pursuant to § 1915A(b)(1) for failure to state a claim upon which relief may be granted.

It should be noted that authority from other circuits is not uniform on this issue. The Sixth and Eighth Circuits have squarely held that constitutional privacy protection does not extend to an individual's HIV status.[12] Those decisions rested on the persuasive reasoning, relied on here, that there is no Supreme Court authority "holding that prisoners have a constitutional right to the confidentiality of their medical records," nor is there any explicit textual basis in the Constitution for creating such a fundamental right. *Tokar*, 97 F.3d at 1084 (quoting *Anderson*, 72 F.3d at 523); *accord Wigginton*, 21 F.3d at 740. The Second and Tenth Circuits have reached a contrary conclusion based on reasoning that is neither controlling nor persuasive here.[13]

■ It may well be sensible public policy to provide legal protection to ensure the privacy of medical records. Indeed, most persons would so conclude, although perhaps not in all circumstances or for all kinds of medical information. Yet, even assuming that privacy protection should be accorded to an individual's medical information, the nature and scope of that protection is more sensibly determined by elected legislators via state[14] or federal[15]

---

**12.** *Tokar v. Armontrout*, 97 F.3d 1078, 1084 (8th Cir.1996) (holding that inmates do not have a clearly established constitutional right to privacy in their HIV status); *Doe v. Wigginton*, 21 F.3d 733, 740 (6th Cir.1994) (holding that there is no general constitutional right to nondisclosure of private information). In addition, the Seventh Circuit, in dictum, has stated that it was not at all certain that an inmate had a constitutional right to privacy in his HIV status. *See Anderson v. Romero*, 72 F.3d 518, 524 (7th Cir.1995).

**13.** *See Doe v. City of New York*, 15 F.3d 264, 267 (2d Cir.1994) (holding that "[i]ndividuals who are infected with the HIV virus clearly possess a constitutional right to privacy regarding their condition"); *A.L.A. v. West Valley City*, 26 F.3d 989, 990 (10th Cir.1994) ("There is no dispute that confidential medical information is entitled to constitutional privacy protection.")

**14.** Indeed, current state laws address patient confidentiality and privacy of medical rec-

ords. *See, e.g.,* Ariz.Rev.Stat. § 36–664; Cal. Health & Safety Code § 121025; Conn. Gen. Stat. § 19a–583; Del.Code Ann. § 1232; Fla. Stat. ch. 381.0055; Haw.Rev.Stat. § 325–101; 410 Ill. Comp. Stat. 305/1 *et seq.;* Kan. Stat. Ann. § 65–5602; Md.Code Ann. § 4–302; Mass. Gen. Laws ch. 111, § 70E; Minn.Stat. § 144.651; Mont.Code Ann. § 50–16–525; Neb.Rev.Stat. § 71–511; N.H.Rev.Stat. Ann. § 141–F:8; N.D. Cent.Code § 23–01.3–01 *et seq.;* Ohio Rev.Code Ann. § 3701.24.3; Okla. Stat. tit. 63, § 1–502.2; Tex. Health & Safety Code Ann. § 181.001 *et seq.;* Utah Code Ann. § 26–6–27; Va.Code § 32.1–127.1:03; Wash. Rev.Code § 70.02.020.

**15.** The Privacy Rule of the federal Health Insurance Portability and Accountability Act of 1996 ("HIPAA"), Pub.L. 104–191, which became effective April 14, 2003, creates national standards to keep individuals' medical records and other personal health information confidential. Standards for Privacy of

statute, rather than by judicial stretching of the constitutional text to reach a subject not explicitly treated in the text. This is so because "[i]nferring very broad 'constitutional' rights where the Constitution itself does not express them is an activity not appropriate to the judiciary." *J.P. v. DeSanti*, 653 F.2d 1080, 1090 (6th Cir. 1981) (holding that disclosure of juveniles' social histories did not violate any federal constitutional privacy right). Accordingly, an appropriate Order shall issue.

Individuals' Identifiable Health Information,