J-S41012-15

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| KEVIN SOUFFRANT, | |
| Appellant | No. 1299 MDA 2014 |

Appeal from the Judgment of Sentence entered July 3, 2014,
in the Court of Common Pleas of Lancaster County,
Criminal Division, at No(s): CP-36-CR-0002313-2013
and CP-36-CR-0002314-2013

BEFORE:  ALLEN, LAZARUS, and PLATT*, JJ.

MEMORANDUM BY ALLEN, J.:                     **FILED JULY 24, 2015**

Kevin Souffrant ("Appellant") appeals from the judgment of sentence imposed following his conviction for first-degree murder, aggravated assault, two counts of simple assault, terroristic threats, and endangering the welfare of a child.[1]

The pertinent facts and procedural history are as follows:  On March 9, 2013, officers from the Lancaster City Bureau of Police responded to a report of shots fired at 1117 Wabank Street, Apartment C-304, in Lancaster County, Pennsylvania.  Affidavit of Probable Cause, 3/10/13.  Upon arrival,

_____

[1] 18 Pa.C.S.A. §§ 2502(a), 2702(a)(1), 2701(a)(3), 2706(a)(1), and 4304(a)(1).

*Retired Senior Judge assigned to the Superior Court.

the officers located inside the apartment a deceased female, Shadae Brooks, who had suffered multiple gunshot wounds, and additionally found Appellant in the vestibule outside the apartment, also suffering from multiple gunshot wounds. *Id*. Their investigation led police officers to interview Leonda Washington and Shaina Taylor-Brooks, who informed police that they had been inside the apartment prior to the shooting, and saw Appellant strike the victim on the head with a small silver handgun, and threaten to kill everyone in the apartment, including three children under age five. *Id*., N.T., 5/6/14, at 275-276. Ms. Washington and Ms. Taylor-Brooks were able to leave the apartment with two of the children while Appellant was beating the victim, and when the victim attempted to give Ms. Washington and Ms. Taylor-Brooks the third child to take with them, Appellant physically restrained her from doing so, and pointed the gun at Ms. Washington and Ms. Taylor-Brooks. *Id*. Ms. Washington and Ms. Taylor-Brooks were able to leave with two of the children while the victim remained in the apartment with Appellant and her infant child. *Id*. Appellant instructed Ms. Washington and Ms. Taylor-Brooks that if he heard police sirens he would shoot the victim, and the two women thus opted not to report the incident to police. *Id.*, at 314. However, at approximately 4:38 p.m. that afternoon, Officer Mark Gehron received a report from an unidentified source of shots fired at Apartment C-304, and upon arrival found Appellant and the deceased victim. *Id*. at 388-389; 415-416. Appellant was transported to Lancaster General Hospital for treatment of his gunshot injuries, where he

was interviewed by police and informed them that two men had entered his apartment and shot him and the decedent. Following further investigation, Appellant was arrested and charged with the aforementioned crimes.

On July 17, 2014, Appellant filed a motion to suppress the statements he made to the police while undergoing treatment at Lancaster General Hospital. Following a suppression hearing on April 15, 2014, the trial court denied Appellant's motion. A jury trial commenced on May 5, 2014, at the conclusion of which the jury returned its guilty verdicts. On July 3, 2014, the trial court sentenced Appellant to life imprisonment without the possibility of parole for murder, and consecutive sentences of six to twelve years for aggravated assault, one to two years for the first count of simple assault, one to two years for the second count of simple assault, one to two years for terroristic threats, and one to two years for endangering the welfare of a child. Appellant filed a notice of appeal on July 10, 2014. Both Appellant and the trial court have complied with Pa.R.A.P. 1925.

Appellant raises two suppression issues for our review:

I. Did the trial court err in denying [Appellant's] suppression motion, where his statement was the fruit of illegally obtained medical records and protected health information regarding [Appellant's] level of cognitive awareness, the medication he was receiving, and its effects on his cognition?

II. Did the trial court err in denying [Appellant's] suppression motion, where his statement was not knowing, intelligent and voluntary, and where the statement was obtained in violation of [Appellant's] constitutional rights to end the interrogation?

Appellant's Brief at 5.

Our scope and standard of review of suppression claims is well settled:

An appellate court's standard of review in addressing a challenge to a trial court's denial of a suppression motion is limited to determining whether the factual findings are supported by the record and whether the legal conclusions drawn from those facts are correct. [Because] the prosecution prevailed in the suppression court, we may consider only the evidence of the prosecution and so much of the evidence for the defense as remains uncontradicted when read in the context of the record as a whole. Where the record supports the factual findings of the trial court, we are bound by those facts and may reverse only if the legal conclusions drawn therefrom are in error.

*Commonwealth v. Reese*, 31 A.3d 708, 721 (Pa. Super. 2011) (citations omitted).

In his first issue, Appellant challenges the trial court's denial of his suppression motion, and maintains that the trial court should have suppressed evidence and statements he made to the police while undergoing treatment at Lancaster General Hospital. Appellant's Brief at 16-25. Specifically, Appellant asserts that while he was hospitalized at Lancaster General Hospital, Detective Aaron Harnish asked one of Appellant's nurses what medication Appellant was taking and whether it would have any effect on his capacity to understand and be able to respond to interview questions. Appellant's nurse informed the officer that Appellant had been prescribed Fentanyl, and that it would not have any effect on his cognitive abilities. Shortly thereafter, Detective Harnish provided Appellant with *Miranda* warnings, and proceeded to interview Appellant about the March 9, 2013

shooting, during which Appellant informed the officer that an individual named Will Blackman and another unidentified male had forced their way into Appellant's apartment and were responsible for the shooting. N.T., 4/15/14, at 67-68.[2]

_____

[2] At the suppression hearing, Detective Harnish testified about his conversation with the Lancaster General Hospital staff regarding Appellant's condition:

| | |
|---|---|
| Assistant District Attorney: | What did you do ... from the time you arrived [at Lancaster General Hospital] until you had an opportunity to speak with [Appellant]? |
| Detective Harnish: | We did several things. One of those things was speak to a nurse to ascertain his cognitive abilities as to whether or not he was on any psychotropic medication, to determine what his speech was like, what his awareness was like and to basically assess whether or not he had the capacities to be able to be interviewed at that point in time. We also spoke to the officers on scene to see if they had any interaction with him, making similar assessments. |
| Assistant District Attorney: | Now, obviously at that point in time, [Appellant] had sustained at least three gunshot wounds, correct? |
| Detective Harnish: | That's correct. |
| | \*\*\* |
| Assistant District Attorney: | And did the medical staff that you made contact with indicate to you whether or |

*(Footnote Continued Next Page)*

Appellant alleges that Detective Harnish's question to the nurse about his medications constituted an "illegal search" in violation of his HIPPA privacy rights, and that under the Fourth Amendment of the United States Constitution, and Article I, Section 8 of the Pennsylvania Constitution, he is entitled to suppression of the statements he made to Detective Harnish. We disagree.

In general, the Fourth Amendment of the United States Constitution, and Article I, Section 8 of the Pennsylvania Constitution, do not permit police to conduct searches or seizures absent a lawfully obtained search warrant, and evidence seized as a result of an illegal search must be suppressed. ***Commonwealth v. Dougalewicz***, 113 A.3d 817, 824 (Pa. Super. 2015) Here, Appellant argues that because Detective Harnish obtained his medical information in violation of HIPAA, and then proceeded to interrogate him after unlawfully receiving information about his medications, he is entitled to

*(Footnote Continued)* ────────────

|  | not he would have the cognitive ability to speak with you? |
|---|---|
| Detective Harnish: | They did. The nurse had stated that he was on a fentanyl drip but that it should not affect his cognitive ability in any way, and that there was no other medication that he was taking that would affect his recollection. |

N.T., 4/15/14, at 49-50.

suppression because they were obtained in violation of his constitutional right to privacy. Appellant's Brief at 16-25.

HIPAA is a federal statute that "provides for monetary fines and various terms of imprisonment for the wrongful disclosure of individually identifiable health information. 42 U.S.C. § 1320d–6." *T.M. v. Elwyn, Inc.*, 950 A.2d 1050, 1059 (Pa. Super. 2008). "HIPAA provides for confidentiality of medical records and governs the use and disclosure of protected health information by 'covered entities' that have access to that information and that conduct certain electronic health care transactions. HIPAA provides both civil and criminal penalties for improper disclosures of medical information and limits enforcement of the statute to the Secretary of Health and Human Services. ... The ability to bring an enforcement action to remedy HIPAA violations, and ensure that a healthcare provider is HIPAA compliant, lies within the exclusive province of the Secretary of Health and Human Services...." *Jackson v. Mercy Behavioral Health*, 2015 WL 401645, at 3 (W.D. Pa. Jan. 28, 2015) (citations an internal quotations omitted). *See also United States v. Prentice*, 683 F. Supp. 2d 991, 1001 (D. Minn. 2010) (HIPAA was enacted in order to assure an individual's right to privacy in his or her medical records and provides that [a] covered entity may not use or disclose protected health information, except as permitted or required by the regulations; a covered entity is defined as a health plan, a health care clearinghouse, or a health care provider, that transmits health

information electronically, in certain kinds of covered transactions, and accordingly, a law enforcement agency is not a covered entity, subject to the restraints on the use or receipt of protected medial information); Title 45 C.F.R. § 164.104 and 164.502; ***Miller v. Allstate Fire & Cas. Ins. Co.***, No. CIV. 07-260, 2009 WL 700142, at \*3 (W.D. Pa. Mar. 17, 2009) ("Entities covered by HIPAA include:   (1) a health plan, (2) a health care clearinghouse, and (3) a health care provider ... 45 C.F.R. § 160.10.").

In this case, Appellant does not allege, nor does HIPAA indicate, that law enforcement officers are "covered entities" subject to the confidentiality requirements of HIPAA.  Appellant cites no authority that compels a finding that under the either the federal or state constitutions, HIPAA-protected medical information obtained by a police officer from a hospital employee should be suppressed in a criminal proceeding against the patient.  Appellant does not direct us, nor are we able to find, any language within HIPAA itself that would mandate suppression of evidence in a criminal proceeding; nor are we aware of any other statutory or precedential authority which would compel the suppression of the statements made by Appellant during his interview with Detective Harnish.  ***See Elder-Evins v. Casey***, No. C 09-05775 SBA LB, 2012 WL 2577589, at \*8 (N.D. Cal. July 3, 2012) ("As other courts have noted, HIPAA does not have a suppression remedy [a]nd where this is the case, it is inappropriate for the court to exclude evidence on this basis."); ***United States v. Elliott***, 676 F. Supp. 2d 431, 439 (D. Md. 2009);

("Federal courts have acknowledged the importance of protecting a patient's right to privacy in medical records[;] [t]hat right, however, is not absolute, and must be balanced against the government's interests in obtaining the information. ... HIPPA was passed to ensure an individual's right to privacy over medical records, it was not intended to be a means for evading prosecution in criminal proceedings.") (citations omitted); **United States v. Streich**, 560 F.3d 926, 935 (9th Cir. 2009) ("HIPAA does not provide any private right of action, much less a suppression remedy."); **Sherman v. Jones**, 258 F. Supp. 2d 440, 443 (E.D. Va. 2003) ("There is no general fundamental constitutional right to privacy in personal medical information.").

Even if Appellant's nurse, as an employee of Lancaster General Hospital, violated his HIPAA-protected privacy rights by informing Detective Harnish that Appellant was on Fentanyl, we find no merit to Appellant's claim that Appellant's subsequent statements to Detective Harnish were a product of that alleged HIPAA violation and should have been suppressed as "fruit of the poisonous tree."[3] As this Court has made clear, "[t]he fruit of the

---

[3]**See Commonwealth v. Shaw**, 370, 431 A.2d 897, 900 (Pa. 1981) *quoting* **Wong Sun v. United States**, 371 U.S. 471, 488, 83 S.Ct. 407, 417, 9 L.Ed.2d 441 (1963) (emphasis added, citation omitted) (The United States Supreme Court has held that not all evidence is 'fruit of the poisonous tree' simply because it would not have come to light *but for* the illegal actions of the police. Rather, the more apt question in such a case is whether, granting establishment of the primary illegality, the evidence to which
*(Footnote Continued Next Page)*

poisonous tree doctrine excludes evidence obtained from, or acquired as a consequence of, lawless official acts." *Commonwealth v. Brown*, 700 A.2d 1310, 1318 (Pa. Super. 1997). Here, Appellant alleges that Detective Harnish committed a "lawless official act" when he asked the nurse if Appellant was on any mind-altering medication, and that the statements made by Appellant during the detective's subsequent interview should have been suppressed. As explained above, however, we find no authority upon which to hold that Detective Harnish conducted an unconstitutional or otherwise unlawful search or seizure when he asked the nurse about Appellant's medication, and accordingly we find no merit to Appellant's clam that his subsequent statements to Detective Harnish were obtained by exploitation of any illegality to warrant suppression. Appellant's claim that he is entitled to suppression because of a violation of his rights under HIPAA, fails.

In his second issue, Appellant claims that his *Miranda* waiver and subsequent statements to Detective Harnish were not knowing, intelligent, and voluntary because at the time he made them, he had suffered several gunshot injuries, was on Fentanyl, and was incapable of understanding what he was doing. Appellant's Brief at 26-33. Additionally, Appellant argues

*(Footnote Continued)* ⎯⎯⎯⎯⎯⎯⎯

instant objection is made has been come at by exploitation of that illegality or instead by means sufficiently distinguishable to be purged of the primary taint.").

that in the course of the custodial interrogation, Detective Harnish violated Appellant's constitutional rights when he failed to halt the interrogation after Appellant complained of suffering physical pain, repeatedly stated that he did not want to talk any more, asked to call his mother, and requested a lawyer. *Id*. Accordingly, Appellant argues that his statements made during Detective Harnish's interrogation should have been suppressed.[4]

The trial court, addressing these claims, explained:

[Appellant's] statements to the police were not obtained in violation of his Constitutional rights. Testimony was presented at the suppression hearing that the detectives who interviewed [Appellant] identified themselves prior to the beginning of the interview. The Detective explained to [Appellant] that he wanted to talk to him and asked [Appellant] if he would be willing to speak to them, at which point the detective read [Appellant] his *Miranda* rights. [Appellant] was informed that he could stop the interview at any point if he did not understand the question or needed explanation. Based on these circumstances, it appears [Appellant] knowingly, voluntarily, and intelligently waived his Constitutional rights prior to making his statements.

In addition, the level of articulation required to invoke the right to counsel in Pennsylvania is not met if a Defendant asks whether an attorney is necessary. ... Since [Appellant] merely asked the police whether he needed an attorney, he did not articulate his desire to have an attorney present during the questioning.

[Appellant] also claims that his right to remain silent was not honored. The Detective testified at the suppression hearing that during their interview, [Appellant] made several requests to

_____

[4] The Commonwealth does not contest that Appellant was subjected to a custodial interrogation when interviewed by Detective Harnish at Lancaster General Hospital.

invoke his right to remain silent, but he then continued to talk unprompted by the police. The Supreme Court of the United States held that the right to remain silent must be "scrupulously honored" when it is invoked. ***See Miranda v. Arizona***, 384 U.S. 436, 479 (1966). However, the police may reinitiate interrogation after the right to remain silent is invoked. ***See Commonwealth v. Harris***, 972 A.2d 1196, 1203 (2009). Here, [Appellant] did pause during the interview, but [Appellant] continued to volunteer the information without provocation by the police, and therefore, his claim is meritless.

Finally, [Appellant] states that the physical pain he was experiencing during his questioning caused the interrogation to be illegal. However, the police questioned [Appellant's] nurse as to what medication [Appellant] was on, and found [Appellant] to have a proper cognitive ability to provide a knowing, intelligent, and fully voluntary statement.

Trial Court Opinion, 10/31/14, at 4-5.

Upon review, we find no error in the trial court's analysis. At the suppression hearing, Detective Harnish testified that he had been employed as a police detective for over fourteen years, during which he had on multiple occasions observed individuals under the influence of drugs and alcohol, and understood the signs and symptoms indicating the individual's ability to comprehend. N.T., 4/15/14, at 59. He testified that when he provided Appellant with his ***Miranda*** rights and interviewed him, he observed no indication that Appellant was unable to understand him, and that Appellant consistently displayed cognitive awareness. ***Id***.

Additionally, Detective Harnish testified that although Appellant did indicate during the interview that he no longer wanted to speak to the police, Appellant then "almost in the same breath" continued to speak about

the events of March 9, 2013, thereby voluntarily waiving his right to remain silent, and continuing to talk, on his own initiative. N.T., 4/15/14, at 62. *See Commonwealth v. Nahodil*, 462 Pa. 301, 305-06, 341 A.2d 91, 93 (1975) (After the defendant indicated he would not answer any questions, the police were required to immediately desist from further questioning, but the defendant had the right to later change his mind and waive his right to remain silent, providing he did it voluntarily and on his own initiative, and the burden of proving that his change of mind occurred voluntarily and without his being threatened, tricked or cajoled, was upon the Commonwealth).

Finally, although Appellant during the interview asked the detective if he "thought he needed an attorney," such a statement does not constitute an unequivocal invocation of the right to counsel, particularly because after asking whether he needed an attorney, Appellant immediately and volitionally continued to speak to the officers. *See Commonwealth v. Champney*, 65 A.3d 386, 387 (Pa. 2013) *cert. denied sub nom*. *Pennsylvania v. Champney*, 134 S. Ct. 1276, 188 L. Ed. 2d 359 (2014) *quoting* *Davis v. United States*, 512 U.S. 452, 114 S.Ct. 2350, 129 L.Ed.2d 362 (1994) (for the *Miranda/Edwards* rule to apply, there must be an unequivocal invocation of the right to counsel; the determination of whether the right to counsel was invoked by the accused is an "objective inquiry" but requires, at a minimum, some statement that can reasonably be

construed to be an expression of a desire for the assistance of an attorney in dealing with custodial interrogation by the police; if the accused makes an ambiguous or equivocal reference that would lead an officer, in light of the circumstances, to believe that the accused might be invoking the right to counsel, the police interrogation need not cease; rather the suspect must "articulate his desire to have counsel present sufficiently clearly that a reasonable police officer in the circumstances would understand the statement to be a request for an attorney").

Given the foregoing, we find no error in the trial court's denial of Appellant's suppression motion, and accordingly, we affirm the judgment of sentence.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 7/24/2015