851 F.2d 1236
 18 UNNAMED "JOHN SMITH" PRISONERS, Plaintiffs-Appellants,
v.
Edwin MEESE; Gerald Shur; Norman Carlson; Peter Carlson;
Frank Sizer; U.S. Attorney for the District of
Arizona, Defendants-Appellees.
36 UNNAMED "JOHN SMITH" PRISONERS; 5 Unnamed "John & Jan
Smith" Prisoners' Relatives; 1 Unnamed "John
Smith" Prisoner; 1 Unnamed "John Smith"
Prisoner Family, Plaintiffs-Appellants,
v.
Edwin MEESE, United States Attorney General; Gerald Shur,
Associate Director, Office of Enforcement Operations,
Washington, D.C.; Norman Carlson, Director, Federal Bureau
of Prisons; Peter Carlson, Warden, Federal Correctional
Institution, Phoenix, AZ: Frank Sizer, Unit Manager, Mesa
Unit, Federal Correctional Institution, Phoenix, AZ,
Defendants-Appellees.
 Nos. 87-2490, 87-2491.
 United States Court of Appeals,
Ninth Circuit.
 Argued and Submitted June 16, 1988.
Decided July 19, 1988.
 
 Gary L. Birnbaum & Michael S. Rubin, Mariscal, Weeks, McIntyre & Friedlander, Larry L. Smith, O'Connor, Cavanagh, Anderson, Westover, Killingsworth & Beshears, Jeffrey A. Murphy, Morris, Walker & Mecham, Phoenix, Ariz., for plaintiffs-appellants.
 Michael A. Johns and Linda A. Akers, Asst. U.S. Attys., Phoenix, Ariz., for defendants-appellees.
 Appeal from the United States District Court for the District of Arizona.
 Before ALDISERT,* BEEZER and O'SCANNLAIN, Circuit Judges.
 BEEZER, Circuit Judge:
 
 
 1
 In this consolidated action, inmates and their families (collectively, inmates) attack the validity of proposed double bunking of prisoners housed in the Protective Custody Unit (PCU) at the Federal Correctional Institution (FCI) in Phoenix, Arizona. Plaintiff inmates are protected witnesses in the Department of Justice's Witness Protection Program (WITSEC Program), which protects witnesses who have testified against organized crime defendants. The inmates contend that the proposal to house two WITSEC Program inmates in a single cell will reveal their identities, thereby endangering their lives and their relatives' lives. The inmates appeal from the district court's grant of summary judgment in favor of the government.[1] Because we find that the inmates' claims are not sufficiently ripe for review, we affirm the district court's dismissal of the action.
 
 
 2
 * The inmates complaint, seeking to enjoin the proposed double bunking at the PCU, was filed August 21, 1986. Upon motion, the district court granted a temporary restraining order enjoining the government from double bunking inmates enrolled in the WITSEC Program at the PCU. The district court's order also appointed counsel to represent the inmates and granted the inmates' request to have their initials and identification numbers sealed.
 
 
 3
 On September 22, 1986, the government moved to dismiss. The inmates subsequently filed a cross-motion for summary judgment and response to motion to dismiss. On June 29, 1987, the district court granted the government's motion to dismiss, which it construed as a motion for summary judgment. The court denied the inmates' cross-motion for summary judgment and dissolved the temporary restraining order. The district court reasoned that (1) the Attorney General is vested with broad discretion in administering the WITSEC Program and that double bunking is not prohibited by that Program; (2) double bunking does not constitute infliction of cruel and unusual punishment in violation of the eighth amendment; and (3) by allowing double bunking, the government has not violated its affirmative custodial duty to provide for the inmates' personal security and safety. The inmates timely appeal.
 
 II
 
 4
 As a threshold matter, we must determine whether the inmates' claims are sufficiently ripe for review as a concrete case or controversy. Although no actual injury has yet occurred, the inmates seek a permanent injunction against the proposed double bunking at the PCU on the grounds that it would subject them and their relatives to a potentially life-threatening situation. In essence, the inmates also ask the court to find that the proposed double bunking is prohibited by the WITSEC statutes and will be violative of the eighth amendment and the due process clause of the fifth amendment.
 
 
 5
 The Supreme Court has reasoned that ripeness is peculiarly a question of timing. Thomas v. Union Carbide Agric. Prods. Co., 473 U.S. 568, 580, 105 S.Ct. 3325, 3332, 87 L.Ed.2d 409 (1985). The ripeness doctrine prevents courts, through avoidance of premature adjudication, from entanglement in theoretical or abstract disagreements that do not yet have a concrete impact on the parties. Id.; Abbott Laboratories v. Gardner, 387 U.S. 136, 148, 87 S.Ct. 1507, 1515, 18 L.Ed.2d 681 (1967); Assiniboine and Sioux Tribes v. Board of Oil and Gas, 792 F.2d 782, 787 (9th Cir.1986). We must evaluate "both the fitness of the issues for judicial decision, and the hardship to the parties of withholding court consideration." Abbott, 387 U.S. at 149, 87 S.Ct. at 1515; see also Thomas, 473 U.S. at 581, 105 S.Ct. at 3333; Trustees for Alaska v. Hodel, 806 F.2d 1378, 1381 (9th Cir.1986). Moreover, we recognize that " '[o]ne does not have to await the consummation of threatened injury to obtain preventive relief. If the injury is certainly impending, that is enough.' " Thomas, 473 U.S. at 581, 105 S.Ct. at 3333 (quoting Regional Rail Reorganization Act Cases, 419 U.S. 102, 143, 95 S.Ct. 335, 358, 42 L.Ed.2d 320 (1974)).
 
 
 6
 In August 1985, the PCU began accepting WITSEC inmates. The single bed capacity of the unit is 56 rooms. In August 1986, the PCU manager informed the WITSEC inmates that some of the cells would be double bunked to allow for additional WITSEC inmates. The PCU had been advised by the Inmate Monitoring Section, Bureau of Prisons in Washington, D.C., that it would be double bunked. The initial plan was to double bunk about six of the 56 cells. The inmates allege an impending constitutional injury under the eighth amendment and the due process clause of the fifth amendment. They also contend that the proposed policy is prohibited by the WITSEC statutes.
 
 
 7
 After carefully reviewing the record we conclude that the effects of the proposed double bunking are speculative. We have no evidence of a concrete injury caused by actual overcrowding, intolerable conditions, deprivations of essential food, inadequate medical care,[2] lack of sanitation, violence, revelation of identity, breach of safety, and the like. Nor can we conjecture with any reasonable measure of assurance what impact the proposed double bunking would have on the inmates. The inmates' claims involve " 'contingent future events that may not occur as anticipated, or indeed not occur at all.' " Thomas, 473 U.S. at 581, 105 S.Ct. at 3333 (quoting 13A C. Wright, A. Miller & E. Cooper, Federal Practice and Procedure Sec. 3532 (1984)). Their claim is not fit for decision since the issues raised require further factual development. Trustees for Alaska, 806 F.2d at 1381; see also Regional Rail, 419 U.S. at 143-44, 95 S.Ct. at 358-59; Pacific Legal Foundation v. State Energy Resources, 659 F.2d 903, 911 (9th Cir.1981), aff'd, 461 U.S. 190, 103 S.Ct. 1713, 75 L.Ed.2d 752 (1983). Accordingly, we conclude that the inmates' claims are not sufficiently concrete to warrant judicial intervention.
 
 
 8
 AFFIRMED.
 
 
 
 *
 The Honorable Ruggero J. Aldisert, Senior United States Circuit Judge for the Third Circuit, sitting by designation
 
 
 [1]
 Named as defendants in these actions are Edwin Meese, Attorney General for the United States, Gerald Shur, Associate Director of the Office of Enforcement Operations, Norman Carlson, Director of the Federal Bureau of Prisons, Peter Carlson, Warden of the FCI in Phoenix, and Fred Sizer, Manager of the PCU at the FCI in Phoenix
 
 
 [2]
 The inmates draw our attention to isolated incidents of alleged inadequate medical treatment. These incidents do not amount, however, to a showing of deliberate indifference by the PCU staff to the inmates' serious medical needs. Estelle v. Gamble, 429 U.S. 97, 104, 97 S.Ct. 285, 291, 50 L.Ed.2d 251 (1976). Moreover, what future impact double bunking would have on medical care is conjectural