**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

UNITED STATES OF AMERICA,
            *Plaintiff-Appellee,*

            v.

DONALD JAY STREICH,
            *Defendant-Appellant.*

No. 07-30105

D.C. No.
CR-05-05247-RBL

OPINION

Appeal from the United States District Court
for the Western District of Washington
Ronald B. Leighton, District Judge, Presiding

Argued and Submitted
October 21, 2008—Seattle, Washington

Filed March 9, 2009

Before: Diarmuid F. O'Scannlain, Pamela Ann Rymer, and
Andrew J. Kleinfeld, Circuit Judges.

Opinion by Judge O'Scannlain;
Judge Kleinfeld Writes Separately

## COUNSEL

Jonathan S. Solovy, Law Office of Jonathan S. Solovy, Seattle, Washington, argued the cause for the defendant-appellant and filed the briefs.

Mark Parrent, Assistant United States Attorney, Seattle, Washington, argued the cause for the plaintiff-appellee and filed the brief. Jeffrey C. Sullivan, United States Attorney, Seattle, Washington, was also on the brief.

## OPINION

O'SCANNLAIN, Circuit Judge:

We must decide whether a criminal defendant who pled guilty can challenge the inclusion of information in his Pre-Sentence Report that might put him at risk of subsequent civil confinement.

I

A

For the better part of 2004, Donald Jay Streich boarded in the homes of several families with small children at Fort Lewis, Washington. In most of these households, the father was serving in Iraq and the mother needed assistance caring for the children. Streich typically received board and some spending money in exchange for his help babysitting and housekeeping.

In the last such household, Streich was responsible for a seven year-old boy and a fifteen year-old boy, both the children of a Mrs. T. from a previous marriage. One morning, military police pulled Streich over for speeding. After a background check, the officers discovered that there was an outstanding warrant for Streich's arrest in a nearby county for Failure to Register as a Sex Offender. Streich pled guilty to this crime and was sentenced to eight months in jail.

During Streich's incarceration, Mrs. T.'s husband, Mr. T., who had been deployed in Iraq when Streich began living in the house, returned home. One day, while searching the house for his wife's digital camera, he discovered it in a book bag belonging to Streich. On that camera he found pornographic photographs of his seven year-old stepson. After investigation, federal officers ultimately found evidence that Streich, twenty-three years-old at the time, had had multiple sexual encounters with Mrs. T's fifteen year-old son.

B

On the basis of the sexual encounters with the fifteen year-old boy only, prosecutors brought an indictment against Streich for one count of sexual abuse of a minor in violation of 18 U.S.C. § 2243. The photographs of the seven year-old boy did not generate separate charges. Streich utlimately pled

guilty to the sexual abuse charge pursuant to an agreement including two provisions important to this appeal. First, in a section entitled "Ultimate Sentence," the agreement stated that the "[d]efendant acknowledges that no one has promised or guaranteed what sentence the Court will impose." Indeed neither side promised to make a particular sentencing recommendation. The agreement also included a provision entitled "Non-Prosecution of Additional Offenses," which read in relevant part:

> As part of this Plea Agreement, the United States Attorney's Office for the Western District of Washington agrees to not prosecute the Defendant for any additional offenses known to it as of the time of this Agreement that are based upon evidence in its possession at this time, or that arise out of the conduct giving rise to this investigation. In this regard, Defendant recognizes that the United States has agreed not to prosecute all of the criminal charges that the evidence establishes were committed by Defendant solely because of the promises made by Defendant in this Agreement. Defendant acknowledges and agrees, however, that for purposes of preparing the Presentence Report, the United States Attorney's Office will provide the Untied States Probation Officer with evidence of all relevant conduct committed by Defendant.

In anticipation of sentencing, the probation officer prepared an unusually long and detailed presentence report ("PSR"). The PSR included information about an earlier conviction, when Streich was seventeen years-old, on one count of child molestation and one count of attempted child molestation. Streich had been incarcerated by the Washington State Juvenile Rehabilitation Administration and subsequently released on parole. At some point during his incarceration and parole, Streich enrolled in a psychosexual treatment program, in the course of which he volunteered information revealing past,

and potentially criminal, conduct, for which he has not been charged. The only evidence of such conduct appears to be his own disclosures as part of the psychosexual treatment program, which Streich provided in exchange for immunity.

When the probation officer was preparing the PSR, he asked Streich about this prior conviction and the psychosexual treatment that he underwent. At the officer's request and in the presence of defense counsel, Streich signed two releases, authorizing private parties and government entities, respectively, to provide information to the Probation Office.

C

At the sentencing hearing, defense counsel objected to the inclusion in the PSR of the information from Streich's psychosexual treatment records. He argued that Streich had not validly consented to their release. On the basis of that view, the defense urged the district court not to consider information derived from those records to decide on a sentence. In addition, it argued that the district court should excise the portions of the PSR based on the records because they would significantly prejudice Streich in the future. The district judge immediately indicated, and repeated several times, that "with regard to the evidence from the juvenile rehabilitation authority, I was not inclined to use that evidence in formulating a decision."

After hearing testimony, the district court ultimately concluded, "based on a preponderance of the evidence," that Streich validly consented to release the psychosexual treatment records and that excision of the PSR was unnecessary. After further argument from counsel, the district court handed down a sentence of 120 months imprisonment, followed by a five-year term of supervised release subject to certain special conditions. Streich timely appeals.

## II

### A

Streich first argues that the government breached the plea agreement by basing its sentencing recommendation on uncharged conduct, including the photographs he took of Mrs. T's seven-year-old son.[1] We construe a plea agreement as a contract between a government and a defendant. *See United States v. Mondragon*, 228 F.3d 978, 980 (9th Cir. 2000). If "the terms of the plea agreement on their face have a clear and unambiguous meaning, then this court will not look to extrinsic evidence to determine their meaning." *United States v. Clark*, 218 F.3d 1092, 1095 (9th Cir. 2000).

### B

Streich's specific contention is that the government breached the provision of the plea agreement that bound it not to "prosecute" him for any additional offenses based on evidence "in its possession" at the time of the agreement or "that arise out of the conduct giving rise to this investigation." Consistent with this promise, the government did not charge or prosecute Streich for any crime other than that involved in this appeal. However, he points to the fact that the government highlighted the pornographic photographs he took of

---

[1] Streich also appears to raise, on appeal, the district court's failure to resolve his objection to a specific paragraph of the PSR. But the district court did not resolve this objection because Streich withdrew it in his second sentencing memorandum and then declined to revive it at the sentencing hearing. Therefore he has done more than forfeit his objection; he has waived it completely. *See United States v. Olano*, 507 U.S. 725, 733 (1993) ("Waiver is different from forfeiture. Whereas forfeiture is the failure to make the timely assertion of a right, waiver is the intentional relinquishment or abandonment of a known right.") (internal quotation marks omitted). An error to which one waives objection is no error at all, and leaves a court of appeals with nothing to review. *Id.* at 732-33 ("Deviation from a legal rule is "error" unless the rule has been waived.").

Mrs. T.'s seven year-old son. Essentially, Streich contends that by arguing for an upward departure from the sentencing guideline maximum "based, in part, on the evidence concerning the photographs," the government effectively prosecuted him for the additional offense of possession of child pornography in violation of the plea agreement.

**[1]** The crucial term is the government's promise not to "prosecute" Striech for any offenses, other than the charge to which he pled guilty, with respect to which the government had evidence at the time of the agreement. Although the government did not in fact charge him with any crime beside that to which he pled guilty, Streich maintains that a promise not to prosecute means more than merely a promise not to charge him with additional crimes.

**[2]** We disagree. As a matter of common usage, to "prosecute," in connection with the law, means "to institute legal proceedings against." *Webster's Third New International Dictionary* 1820 (1986). Streich relies on our decision in *Mondragon* for the proposition that a promise not to prosecute certain conduct includes a promise not to recommend a heightened sentence on the basis of such conduct. It is true that in *Mondragon* we held it a breach for the government "to influence the district court to impose a harsher sentence than that suggested by [defendant's] counsel." 228 F.3d at 980. But the government in that case had, in fact, promised to "make no recommendation regarding sentence." *Id.* at 979. There, the government's action violated the clear, plain meaning of the term in the plea agreement. Furthermore, in *Mondragon* we began, as we do in this case, with the common, dictionary definition of the contractual term in question. *Id.* at 980 n.3. Thus, *Mondragon* does not support the counterintuitive notion that a promise not to prosecute conduct means a promise not to make a recommendation concerning a sentence; indeed its ratio decidendi refutes any such idea. It is irrelevant that the government advocated for a higher sentence based on uncharged conduct. It never promised to do the contrary, and

we therefore conclude that it did not breach the plea agreement.

## III

Streich also raises a variety of arguments, based on state law, the Federal Rules of Criminal Procedure, Federal privacy laws, and the Fifth and Sixth Amendments to the Federal Constitution, to challenge the inclusion of the pyschosexual treatment information in his PSR. The gravamen of all of these arguments is Streich's fear that the pyschosexual treatment information will ultimately factor into a proceeding to commit him civilly under the Adam Walsh Act. *See* 18 U.S.C. § 4248. Given that the government has not initiated or indicated an interest in initiating any such proceeding, we must ask, as a threshold matter, whether these claims are ripe.

## A

Ripeness is a constitutional prerequisite for jurisdiction; we therefore have no jurisdiction to review claims unless they are ripe. *Reg'l Rail Reorganization Act Cases*, 419 U.S. 102, 138-39 (1974). "Ripeness," the Supreme Court has observed, "is peculiarly a question of timing." *Thomas v. Union Carbide Agr. Prods. Co.*, 473 U.S. 568, 580 (1985) (internal quotations and citation omitted). A claim is not ripe if it involves "contingent future events that may not occur as anticipated, or indeed may not occur at all." *Id.* at 580-81 (internal quotations and citation omitted). At the same time, a litigant need not "await the consummation of threatened injury to obtain preventive relief. If the injury is *certainly* impending, that is enough." *18 Unnamed John Smith Prisoners v. Meese*, 871 F.2d 881, 883 (9th Cir. 1989) (internal quotations and citations omitted) (emphasis added). With this in mind, we evaluate "both the fitness of the issues for judicial decision, and the hardship to the parties of withholding court consideration." *Id.* (quoting *Abbott Labs. v. Gardner*, 387 U.S. 136, 149 (1967)).

Several of our decisions illustrate how to make this evaluation. In *18 Unnamed John Smith Prisoners*, we held that a challenge under the Eighth and Fifth Amendments was not ripe. 871 F.2d at 883. Several inmates, held in protective custody as part of a witness protection program, objected to a proposed policy to "double bunk" them. *Id.* Even though the relevant institution "had been advised by the . . . Bureau of Prisons . . . that it would be double bunked," this Court found the alleged injury to be "speculative." *Id.* Similarly, we held, in *United States v. Abbouchi*, that a Fifth Amendment challenge to a condition of supervised release that the defendant "truthfully answer any questions asked of him by the probation officer" was not ripe. 502 F.3d 850, 859 (9th Cir. 2007). By contrast, the defendant's similar Fifth Amendment challenge in *United States v. Antelope* was ripe because the government had *already* incarcerated him for violating the challenged condition of supervised release. *See* 395 F.3d 1128, 1132-33 (9th Cir. 2005).

B

**[3]** Streich repeatedly invokes the specter of civil commitment under the Adam Walsh Act as the injury of which he complains. He cannot complain about the district court's use of the psychosexual treatment information in sentencing, because the district court explicitly stated that it would not use it. Although there are other uses to which the Bureau of Prisons might put a PSR,² Streich does not complain about those. He has therefore forfeited any challenges he might have made in connection with them. Furthermore, although Streich claims that the district court violated certain statutory and constitutional rights by including the pyschosexual treatment information in his PSR, those technical violations do not motivate his appeal.³ On this issue, Streich's appeal addresses

---

²The Bureau of Prisons can rely on the information included in a PSR for various penological purposes. *See, e.g.*, 28 C.F.R. §§ 301.103, 545.11.

³In any event, if they did, Streich's appeal might very well lack standing on different grounds, namely the absence of any injury in fact. *See Lujan*

only the potential use of the psychosexual treatment information in the PSR for the purposes of civil commitment. His briefs repeatedly invoke the Adam Walsh Act as the cause of his injury and the motivator of his appeal.

**[4]** Taking Streich at his word, then, we assume that his claimed injury is a potential civil commitment on the basis of the inclusion of the psychosexual treatment information in his PSR. This strikes us as the classic example of a "contingent future event" that "may not happen at all." Unlike in *18 Unnamed John Smith Prisoners*, the Bureau of Prisons has not yet made the decision, the consequences of which the defendant objects to. Streich is at the start of his sentence, in a posture similar to Mr. Abbouchi. *See Abbouchi*, 502 F.3d at 853 (stating that the defendant was appealing his conviction and sentence on various grounds). If Abbouchi's Fifth Amendment injury from a condition of supervised release—a condition the district court had already imposed but which had not yet begun—was not ripe, then Streich's injury arising from a hypothetical civil commitment cannot be ripe.[4]

*v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992) (describing injury-in-fact as an "irreducible constitutional minimum"). A plaintiff who asserts a legal claim without any injury-in-fact specific to the litigant has no more standing than a litigant whose injury-in-fact is not ripe.

Under standing law, "[a]bstract injury is not enough," *Schlesinger v. Reservists Committee to Stop the War*, 418 U.S. 208, 219 (1975) (internal quotation marks omitted), for "the party seeking review must himself have suffered an injury," *Sierra Club v. Morton*, 405 U.S. 727, 738 (1972). It is not enough for the law to have been violated; its violation must harm or affect the plaintiff in some way. Even the most generous interpretation of standing doctrine requires that "the interest sought to be protected by the complainant [be] arguably within the zone of interests to be protected or regulated by the statute or constitutional guarantee in question." *Ass'n of Data Processing Serv. Orgs., Inc. v. Camp*, 397 U.S. 150, 153 (1970). That is to say, there must be an interest apart from the adherence to the law that the plaintiff wishes to protect.

[4]Streich also argues that the "harm is not hypothetical because the proposed regulations provide in *mandatory terms* that the B[ureau of ] P[ri-

IV

**[5]** For the foregoing reasons, we AFFIRM the sentence of the district court with respect to the defendant's breach of plea agreement claim and DISMISS WITHOUT PREJUDICE the defendant's claims challenging the inclusion of the psycho-sexual information in the Pre-Sentence Report.

---

KLEINFELD, Circuit Judge, writing separately:

I concur in the majority's rejection of Streich's challenge. Indeed, I concur in the entirety of the opinion, except for the conclusion that Streich's challenge is unripe. In my view, Streich's challenge is ripe. True, insofar as the challenge is addressed to the use of the presentence report in a civil commitment proceeding subsequent to Streich's custodial sentence, the challenge is not ripe. Ripeness, though, flows from the district court's duties under Federal Rule of Criminal Procedure 32, and from the use that will be made of the presentence report even if there never is a civil commitment proceeding.

I. Procedural Considerations

Federal Rule of Criminal Procedure 32 governs the preparation and consideration of presentence reports. The probation officer preparing the report must include an analysis of the applicable sentencing guidelines as well as the defendant's offense history, financial condition, circumstances, and "any

---

sons] must review the presentence report in determining whether to file a petition under the Adam Walsh Act." The point, however, is that the Bureau must still determine whether to file such petition. It may not file it at all; but if it does, Streich will then have an opportunity to challenge his commitment under the procedures of that Act. *See* 18 U.S.C. § 4247(d).

other information that the court requires."[1] The preparer must exclude information that could harm the defendant or others, such as the name of an informant or certain diagnoses.

A copy of the report is given to the defense and prosecution at least a month before the judge considers it. The parties can object to its contents. The court must ensure that the parties are aware of the information that the judge is planning to rely on at sentencing and allow the parties to comment on that information. The court may accept any undisputed portion of the presentence report as true. As for disputed portions, the court must either "rule on the dispute or determine that a ruling is unnecessary . . . because the court will not consider the matter."[2] The advisory committee notes make it clear that a court may do both — it can rule on an objection even if the matter is unnecessary to sentencing but could affect correctional management of the offender.[3] The court must append a copy of its determination to the report provided to the Bureau of Prisons.

The court must do so because the Bureau of Prisons is entitled to rely on the information the judge considered reliable. The presentence report is used by the Bureau of Prisons to determine institutional placement, eligibility for programs, work assignments, financial plans, continuing security evaluations, and possible civil commitment.[4] Leaving disputes unre-

---

[1]Fed. R. Crim. P. 32(d)(1)-(2).

[2]Fed. R. Crim. P. 32(i)(3)(B).

[3]Fed. R. Crim. P. 32, Advisory Committee Notes, 2002 Amendments ("If counsel objects to material in the presentence report that could affect the defendant's *service of sentence*, the court may resolve the question, but is not required to do so.") (emphasis added).

[4]28 C.F.R. §§ 301.103, 545.11 (2007); Civil Commitment of a Sexually Dangerous Person, 72 Fed. Reg. 43205, 43206 (proposed Aug. 3, 2007) (to be codified at 28 C.F.R. pt. 549); Fed. Bureau of Prisons, *Program Statement: Inmate Security Designation and Custody Classification* (2006) *15-22, *48-49, *available at http://www.bop.gov/policy/progstat/ 5100_008.pdf* (presentence report used in initial placement and continuing security evaluations).

solved is inconsistent with the Bureau's use of the contested portions.

In this case, the district judge followed exactly the right procedure. The judge determined that the information from Streich's psychosexual treatment was unnecessary for the determination of his sentence. The court did not, however, stop there. It held a hearing to resolve the dispute over the validity of Streich's waiver of whatever right he might have to nondisclosure of the records at issue. The court heard testimony from the probation officer. It concluded that the waiver was valid and ruled that Streich's history could be both included in the presentence report and considered by the Bureau of Prisons.

The district court thus performed its duty under Rule 32. Presentence reports should include "any circumstances affecting the defendant's behavior that may be helpful in imposing sentence *or in correctional treatment*."[5] Consideration of this information will enable the Bureau of Prisons to determine the best method to address Streich's criminality. If the information is incorrectly included, however, the Bureau will be misled in ways that may harm current management of Streich in his institutional placement and program eligibility.[6] Because Streich's claims are ripe for review on this basis, I would reach their merits discussed below in part II.

## II.   Substantive Considerations

Just because the challenge is ripe does not mean that it is meritorious. It is not. Streich argues that the material regarding his sex crimes as a juvenile was provided confidentially, so its inclusion violated his Fifth Amendment rights. The

[5]Fed. R. Crim. P. 32(d)(2)(A)(iii) (emphasis added).

[6]These harms are potential injuries-in-fact to Streich as well. For example, he may be placed in a different prison or subjected to more security restrictions based on the information. Streich therefore has standing.

record, though, does not support the argument that it was confidential. First, the two paragraphs of the presentence report on which Streich relies for the claim of confidentiality do not say that the information was confidential. They say that "Streich had been given immunity" for the information he disclosed. Immunity and confidentiality are altogether different. When Oliver North described his activities to the Iran/Contra congressional committees, pursuant to a grant of immunity, the immunity protected him from prosecution, but there was nothing confidential about the information broadcast on worldwide television.[7] Second, the judge determined that Streich waived any confidentiality he might have with regard to the information, a finding fully supported by the record. Streich therefore waived his claimed right to confidentiality, which was not violated in any event.

Streich bases a second confidentiality claim on Federal Rule of Criminal Procedure 32(d)(3). That rule requires that the presentence report exclude "any diagnoses that, if disclosed, might seriously disrupt a rehabilitation program"[8] and "any sources of information obtained upon a promise of confidentiality."[9] The former provision only applies to diagnoses; the latter to sources. Neither provision requires exclusion of the information in Streich's presentence report. The purpose of Rule 32(d)'s exclusions is to prevent revealing *to the defendant* information that might harm the defendant or others.[10]

---

[7]*See United States v. North*, 910 F.2d 843, 851 (D.C. Cir. 1990), *modified*, *United States v. North*, 920 F.2d 940 (D.C. Cir. 1990).

[8]Fed. R. Crim. P. 32(d)(3)(A).

[9]Fed. R. Crim. P. 32(d)(3)(B).

[10]*See* Fed. R. Crim. P. 32, Advisory Committee Notes, 1975 enactment ("However, the court may decline to let *the defendant* read the report if it contains (a) diagnostic opinion . . . (b) sources of information . . . , or (c) any other information that, if disclosed, might result in harm to the defendant or other persons."); *id.*, 1989 Amendments ("Although the Committee was concerned about the potential unfairness of having confidential or diagnostic material included in the presentence reports *but not disclosed to a defendant* . . . . some of this material might assist correctional officials in prescribing treatment programs for an incarcerated defendant.") (emphases added).

The latter provision protects someone who, for example, might tell something relevant to the sentence to the probation officer, but fears retaliation if his or her identity is revealed. There is no basis in Rule 32(d)(3)(B) for hiding the material, just the "sources" of the material.

Streich's other challenges are also without merit. Hearsay may be used in sentencing.[11] The Federal Privacy Act does not apply to state agencies.[12] Washington state privacy laws do not apply because federal admissibility is not predicated on state law.[13] HIPAA does not provide any private right of action, much less a suppression remedy.[14]

18 U.S.C. § 3661 provides that "[n]o limitation shall be placed on the information concerning the background, character, and conduct of a person convicted of an offense which a court of the United States may receive and consider for the purpose of imposing an appropriate sentence."[15] Congress thus made a broad policy choice to have a judge be as fully informed as possible before passing sentence on a defendant. Justice in sentencing requires that the judge be fully informed about all the aspects of the defendant's history. Both rehabilitation possibilities and protection of the public require that the judge know who the defendant really is.

Justice is what Donald Streich got. Streich's history as a sexual predator shows that the sexual predation for which he

---

[11]*E.g.*, *United States v. Littlesun*, 444 F.3d 1196, 1200 (9th Cir. 2006).

[12]5 U.S.C. § 552a(a)(1).

[13]*United States v. Becerra-Garcia*, 397 F.3d 1167, 1173 (9th Cir. 2005).

[14]*Webb v. Smart Document Solutions, LLC*, 499 F.3d 1078, 1081 (9th Cir. 2007) ("HIPAA itself provides no right of action."); *United States v. Frazin*, 780 F.2d 1461, 1466 (9th Cir. 2006) ("Had Congress intended to authorize a suppression remedy, it surely would have included it among the remedies it expressly authorized.").

[15]18 U.S.C. § 3661 (2006). *See also* Fed. R. Evid. 1101(d)(3) (evidentiary restrictions inapplicable at sentencing).

was convicted in this case was not an out of character episode, but rather consistent with what his character had been for years. Treatment during his imprisonment, and supervision when he is eventually released, ought properly to reflect his history, and section 3661 requires that the court have access to it.