NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 11-4209
_____

UNITED STATES OF AMERICA

v.

DANNY BANNOUT
a/k/a
D

Danny Bannout,
Appellant

_____

On Appeal from the United States District Court
for the District of New Jersey
D.C. Criminal No. 2-10-cr-00366-002
(Honorable William H. Walls)
_____

Submitted Pursuant to Third Circuit LAR 34.1(a)
January 7, 2013

Before:  SCIRICA, AMBRO and FUENTES, *Circuit Judges*.

(Filed: January 9, 2013)
_____

OPINION OF THE COURT
_____

SCIRICA, *Circuit Judge*.

Defendant Danny Bannout pled guilty to two conspiracy charges and was

sentenced to 190 months' imprisonment. On appeal, he challenges the District Court's

calculation of the amount of loss and its finding that he was an organizer or leader of the conspiracy. He also contends there is an unwarranted disparity between his sentence and those of his co-defendants. We will affirm.

I.

Bannout and Kelvin Jones orchestrated an armed robbery of a perfume warehouse in Carlstadt, New Jersey on February 9, 2010.[1] Jones, an NYPD officer, recruited fellow officers to stage a phony police raid of the warehouse. They brandished their badges and firearms, and restrained and robbed the employees. Meanwhile, Bannout led a crew of individuals who loaded rental trucks with merchandise from the warehouse and transported the merchandise to storage units rented by Bannout. He was arrested several months later and pled guilty to conspiracy to obstruct interstate commerce by armed robbery, 18 U.S.C. § 1951(a).[2]

The District Court found that Bannout was an organizer or leader of the warehouse robbery and increased his offense level by four under the U.S. Sentencing Guidelines Manual (U.S.S.G.) § 3B1.1. The court increased the offense level by three based on the amount of loss, under U.S.S.G. § 2B3.1(b). Bannout's adjusted offense level was 34, and when combined with his criminal history category of II resulted in a Guidelines range of 168-210 months. The court sentenced him to 190 months' imprisonment, and made the

---

[1] A jury convicted Jones of several counts stemming from the robbery, and a different panel of this court affirmed.

[2] Bannout also pled guilty to conspiracy to transport stolen goods in interstate commerce, 18 U.S.C. § 2314, a charge stemming from an unrelated theft from a storage facility. This charge had no effect on his Guidelines calculation.

sentence run concurrent to an 87-month sentence imposed by the Southern District of New York for an unrelated narcotics offense. On appeal, Bannout challenges the court's calculation of the loss and its finding that he was a leader or organizer of the robbery, and contends there is an unwarranted disparity between his sentence and those of his fellow conspirators.[3]

## II.

### A.

Bannout argues the District Court erred in calculating the loss, asserting there was a lack of evidence substantiating the court's calculation and the three-level increase to his offense level under U.S.S.G. § 2B3.1. However, Bannout withdrew this objection at sentencing. Accordingly, he has waived this argument. *See United States v. Streich*, 560 F.3d 926, 929 n.1 (9th Cir. 2009) (citing *United States v. Olano*, 507 U.S. 725, 733 (1993)).

Alternatively, Bannout argues the court should have exercised its discretion to depart downwards under U.S.S.G. § 2B1.1 cmt. n.19, on the ground that the loss calculation overstated the seriousness of the offense. The court considered this argument at sentencing and declined to exercise its discretion. "[W]e lack jurisdiction to review" the discretionary denial of a downward departure "unless the District Court was unaware of its discretion to grant the motion." *United States v. King*, 604 F.3d 125, 141 n.9 (3d Cir. 2010) (citing *United States v. Cooper*, 437 F.3d 324, 332-33 (3d Cir. 2006)).

---

[3] The District Court had jurisdiction under 18 U.S.C. § 3231. We have jurisdiction under 28 U.S.C. § 1291 and 18 U.S.C. § 3742(a).

Accordingly, Bannout has not raised a cognizable issue on appeal with respect to the court's loss calculation.[4]

## B.

Bannout next argues the court erred by finding he was an organizer or leader of the warehouse robbery and increasing his offense level by four under U.S.S.G. § 3B1.1(a). Section 3B1.1 of the Sentencing Guidelines provides that a defendant's offense level shall be increased four levels if "the defendant was an organizer or leader of a criminal activity that involved five or more participants or was otherwise extensive," whereas a three-level increase applies if the defendant was a manager or supervisor of the criminal activity. U.S.S.G. § 3B1.1. "'[I]n distinguishing a leadership and organizational role from one of mere management or supervision . . . . [f]actors the court should consider include the exercise of decision making authority, the nature of participation in the commission of the offense, the recruitment of accomplices, the claimed right to a larger share of the fruits of the crime, the degree of participation in planning or

---

[4] In any event, Bannout's challenge to the loss calculation lacks merit. Bannout argues the court erroneously found the loss was greater than $250,000 by relying on unsubstantiated insurance claims and failing to credit merchandise that was recovered based on information he gave to the government. We review the court's finding as to the amount of the loss for clear error and exercise plenary review over its interpretations of the guidelines. *United States v. Jimenez*, 513 F.3d 62, 85 (3d Cir. 2008).

To determine the amount of loss, the court relied on a letter from the victims explaining the loss, a detailed list of inventory stolen in the robbery, and checks from insurance companies compensating the victims for some of their losses. Contrary to Bannout's argument, the loss calculation is not affected by the fact that some of the stolen merchandise was later recovered. *See United States v. Rivera-Rivera*, 555 F.3d 277, 293 (1st Cir. 2009) ("It is of no moment that the [stolen] items were recovered and returned.") (citation omitted). We see no clear error.

organizing the offense, the nature and scope of the illegal activity, and the degree of control and authority exercised over others.'" *United States v. Ortiz*, 878 F.2d 125, 127 (3d Cir. 1989) (second and third alterations in original) (quoting U.S.S.G. § 3B1.1 cmt. n.4). Not all these factors need to be present for a finding that the defendant was an organizer or leader. *Id.* We review such a finding for clear error. *Id.*

Bannout argues that he was merely a manager or supervisor of the robbery, and that Jones was the leader or organizer of the conspiracy and robbery. He focuses on the facts that Jones recruited and led the team of NYPD officers who raided the warehouse and restrained the employees, and that Jones also decided to rent two extra trucks to carry more stolen merchandise. But "[t]here can, of course, be more than one person who qualifies as a leader or organizer of a criminal association or conspiracy." U.S.S.G. § 3B1.1 cmt. n.4. And the record shows that the robbery of the warehouse was Bannout's idea. Bannout approached Jones and they planned the robbery together, modeling it after a similar robbery the two previously committed. Bannout recruited at least four individuals to participate in the robbery, organized the rental of the trucks used to transport the stolen goods, and rented the facilities used to store the goods. He led the team of individuals who loaded and transported the stolen goods. Bannout also received a higher share of the proceeds than most of the conspirators, with the possible exception of Jones. Accordingly, we see no clear error in the court's finding that Bannout was a leader or organizer of the conspiracy.

### C.

Finally, Bannout contends the court erred by failing to justify the disparity

between his 190-month sentence and the sentences of his co-conspirators, some of which were in the range of 50-75 months. When imposing a sentence, a court must consider "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct." 18 U.S.C. § 3553(a)(6). A defendant challenging his sentence based on § 3553(a)(6) must show that his "circumstances exactly paralleled" those of the defendants who received lower sentences. *United States v. Iglesias*, 535 F.3d 150, 161 n.7 (3d Cir. 2008) (citation omitted). We review for abuse of discretion. *King*, 604 F.3d at 145.

The District Court did not abuse its discretion. The court based Bannout's within-guidelines sentence, in part, on his role as a leader in the robbery, the fact he was on bail when he committed the robbery, and his life of crime. He has not even argued, much less made a showing, that other defendants were similarly situated. Bannout points only to the fact that some of his co-conspirators participated in the raid of the warehouse, posing as police officers and brandishing firearms. But, as the court acknowledged, Bannout plotted the raid and thus shared responsibility for these acts. Several of Bannout's co-conspirators also cooperated with the government. Accordingly, we see no unwarranted disparity between similarly situated defendants.[5]

### III.

For the foregoing reasons, we will affirm the judgment and sentence of the District Court.

---

[5] To the extent Bannout argues the court completely failed to consider this sentencing factor, we disagree. *See, e.g.*, A123.