**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 18-3574
_____

DANNY BANNOUT,
                                        Appellant

v.

UNITED STATES OF AMERICA
_____

On Appeal from the United States District Court
for the District of New Jersey
(D.C. Civil Action No. 2-13-cv-05188)
District Judge:  Honorable William H. Walls
_____

Submitted Pursuant to Third Circuit LAR 34.1(a)
April 14, 2021
Before:  CHAGARES, PHIPPS and COWEN, Circuit Judges

(Opinion filed:  May 17, 2021)
_____

OPINION*
_____

PER CURIAM

    Danny Bannout appeals from an order of the United States District Court for the

District of New Jersey, which denied his motion to vacate sentence filed under 28 U.S.C.

_____

* This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not
constitute binding precedent.

§ 2255.  We granted a certificate of appealability ("COA") on his claim that his attorney provided ineffective assistance during the plea process, including (1) that his attorney coerced him into rejecting the plea offer(s) that had binding stipulations; (2) that his attorney failed to advise him of the substantial benefits of accepting the plea offers with the binding stipulations; and (3) that his attorney failed to present him with the second plea offer.  See 28 U.S.C. § 2253(c)(2); Buck v. Davis, 137 S. Ct. 759, 773 (2017); see also Missouri v. Frye, 566 U.S. 134, 145 (2012); United States v. Bui, 795 F.3d 363, 367 (3d Cir. 2015).  For the reasons that follow, we will affirm the District Court's judgment.

I.

Danny Bannout pleaded guilty to two counts of a multi-defendant, multi-count indictment:  conspiracy to obstruct interstate commerce by armed robbery in violation of 18 U.S.C. § 1951(a), and transportation of stolen goods in interstate commerce in violation of 18 U.S.C. § 2314.  He was sentenced to 190 months in prison.  We affirmed his conviction and sentence on direct appeal.  See United States v. Bannout, C.A. No. 11-4209, 509 F. App'x 169 (3d Cir. 2013).  In August 2013, Bannout filed a pro se motion under 28 U.S.C. § 2255, raising the issue for which we granted a COA, and two other claims.[1]

Bannout's first claim is based on the following.  Bannout was indicted on June 22, 2010.  He retained Harry Batchelder to represent him.  Batchelder sent him a plea

---

[1] The other two claims were:  appellate counsel was ineffective for failing to argue a sentence disparity with an identically situated codefendant (Bannout's brother, Alen, sometimes spelled "Alan"); and post-plea sentencing enhancements violated Bannout's jury-trial right and his due process rights.  Because we did not grant a COA on those

agreement offer dated June 24, 2010, which contained factual stipulations (including that "[a] firearm was brandished or possessed in connection with this offense," and that "[a]t least one person was physically restrained to facilitate commission of this offense"), but no sentencing calculations. Dkt. #1-1 at 29 of 47.[2] Batchelder's cover letter to Bannout stated, "They certainly don't waste time and I can tell you for starters there are provisions contained in that agreement that I will not let you sign." Dkt. #1-1 at 2 of 47.

A second plea agreement offer is dated July 26, 2010. It contained the same factual stipulations, but it also contained sentencing calculations, including a statement that "[t]he parties further agree that a sentence within the Guidelines range that results from the agreed total Guidelines offense level of 30 is reasonable," and that "[t]he parties agree not to seek or argue for any upward or downward departures not set forth herein." Dkt. #1-1 at 39-40 of 47. Bannout alleges that Batchelder never told him about or showed him this offer, and that he was only aware of it when he received his files from appellate counsel. The sentencing range under the second offer would have been 108 to 135 months of imprisonment.

A third offer, which Bannout accepted, was an open plea—it included no factual or sentencing stipulations. As noted, Bannout was sentenced to 190 months in prison. In his § 2255 motion, Bannout claimed that his attorney was ineffective for failing to

---

claims, we will discuss only the first claim.
    [2] We refer to these exhibits and the exhibits attached to Bannout's COA application using the electronic page numbers assigned by CM/ECF.

convey the second offer to him and for failing to explain why accepting a plea offer with stipulations would be beneficial.[3]

The Government responded in opposition to Bannout's § 2255 motion and Bannout replied. The District Court then scheduled an evidentiary hearing, "limited to trial counsel's actions during plea negotiations." Dkt. #30.[4] Following the hearing, the District Court announced its decision from the bench. COA Exhibits at 85-88. The District Court did not find Bannout's testimony credible and concluded that Bannout was aware of the second plea offer and had rejected it. The Court "dismiss[ed] th[e] motion as practically being frivolous." Id. at 88. The Court entered an order that dismissed the petition with prejudice and declined to issue a COA. Dkt. #56.

Bannout timely appealed and we granted a COA on one claim, as noted. The appeal is now fully briefed.

## II.

We have jurisdiction under 28 U.S.C. §§ 1291 and 2253. In a § 2255 proceeding, we exercise plenary review over the District Court's legal conclusions and apply a clear error standard to its findings of fact. United States v. Travillion, 759 F.3d 281, 289 (3d Cir. 2014). We first consider the scope of this appeal. The Government allows that Bannout's § 2255 motion presented a claim under Frye—that his attorney failed to inform him about a plea offer. But the Government argues that Bannout failed to raise a

---

[3] As discussed below, the Government argues that Bannout failed to properly raise in the District Court the latter aspect of the claim.

[4] The District Court appointed counsel, but after two attorneys either failed to communicate with Bannout or failed to make progress in the case (according to Bannout),

4

claim under Lafler v. Cooper, 566 U.S. 156, 162 (2012)—that his attorney gave him deficient advice about the plea offer(s). The Government argues that Bannout "waived" his Lafler claim by failing to properly present it to the District Court. Appellee's Br. at 24.[5]

We agree. Bannout, who was proceeding pro se at the time, focused his memorandum of law in support of his § 2255 motion on an argument that his attorney failed to communicate the second plea offer to him. While Bannout did state in the memorandum that Batchelder's "refus[al] to stipulate" to stipulations "resulted in [an] exponentially higher sentence," see Memorandum of Law at 7-8, Dkt. #1 at 17-18 of 30, we do not construe that passing reference as an argument that Batchelder failed to advise Bannout of the advantage of accepting a plea with binding stipulations.

Bannout did not directly reference Batchelder's failure to explain the benefits of stipulations until Bannout's reply to the Government's answer and his affidavit in support. Dkt. #27 at 23 of 38. But even though soon thereafter Bannout was represented by counsel, he did not seek the Court's permission to amend his § 2255 motion to include a Lafler claim. And at the evidentiary hearing, when the District Court cut off questioning over what advice Batchelder may have given to Bannout about the offers, see COA Ex. at 46-48, Bannout's attorney did not challenge that ruling.[6] We conclude that

---

Bannout hired a private attorney to represent him at the hearing.

[5] Although the Government used the term "waived," we believe it meant to argue that Bannout forfeited the claim by failing to raise it at the appropriate time. See Barna v. Bd. of Sch. Directors of Panther Valley Sch. Dist., 877 F.3d 136, 145 (3d Cir. 2017) (explaining difference between waiver and forfeiture).

[6] The District Court clarified that the sole question was whether Batchelder had

Bannout forfeited any claim under Lafler by not properly raising the issue in the District Court. We thus will not address that aspect of Bannout's claim. Simko v. United States Steel Corp, No. 20-1091, ---F.3d---, 2021 WL 1166407, at *5 (3d Cir. Mar. 29, 2021) (explaining that we will not address a forfeited argument on appeal absent "truly exceptional circumstances" (internal quotation marks and citation omitted)).

The Government also appears to argue that Bannout forfeited his claim that Batchelder "coerced" him to reject plea offers containing stipulations, which "would have been a Sixth Amendment autonomy claim" under McCoy v. Louisiana, 138 S. Ct. 1500, 1507-11 (2018). Appellee's Br. at 14-15. In McCoy, the Supreme Court reiterated that "[s]ome decisions . . . are reserved for the client—notably, whether to plead guilty, waive the right to a jury trial, testify in one's own behalf, and forgo an appeal," id.at 1508, and that if an attorney overrides his client's decision, that constitutes structural error, id. at 1511. Bannout's memorandum of law in support of his § 2255 motion clearly set out an "autonomy" claim: "to the extent that it was Mr. Batchelder, and not the defendant, who was the deciding factor in accepting or rejecting the government's plea offers, that conduct in itself falls squarely within the heartland of Strickland's deficient performance prong." Memorandum of Law at 10, Dkt. #1 at 20 of 30.

---

presented the second offer to Bannout. Id. at 47 ("I only interrupt you because you are not before me because of alleged ineffective assistance of Counsel. You are here because you allege that your client knew nothing of . . . the suggested plea agreement number 2. You are not here because of alleged ineffective assistance of counsel."). See also id. at 79. Similarly, the decision from the bench addressed only the District Court's determination that Batchelder had presented the second offer to Bannout.

We thus consider two of the three aspects of Bannout's claim: (1) that Batchelder coerced him into rejecting the plea offer(s) that had binding stipulations; and (2) that Batchelder failed to present Bannout with the second plea offer.

III.

As noted, the District Court found that Batchelder had presented Bannout with the second plea offer and that Bannout had rejected it. Some evidence weighs against those findings, see COA Ex. at 47-57,[7] but we cannot say that the findings are "clearly erroneous." See United States v. Gambino, 864 F.2d 1064, 1071 n.3 (3d Cir. 1988) (stating that witness credibility determinations are to be accepted unless clearly erroneous); see also Hill v. Beyer, 62 F.3d 474, 482 (3d Cir. 1995) ("Our judicial system affords deference to the finder of fact who hears live testimony of witnesses because of the opportunity to judge the credibility of those witnesses.").

Similarly, the District Court's apparent finding that Batchelder did not "coerce" Bannout to accept a particular plea offer is not clearly erroneous. At the end of the evidentiary hearing, just before announcing its decision, the District Court cut off the Government's closing argument about its contention that Batchelder properly let Bannout

---

[7] Batchelder sent the first and third plea offers to Bannout with cover letters; there was no cover letter for the second plea offer. Prison logs reflect that Batchelder visited Bannout at the prison to discuss the first and third offers; he did not visit him at the time of the second offer. And Batchelder's evidentiary hearing testimony was somewhat contradictory. He testified that he believed he sent the second plea offer without a cover letter, or that he conveyed the offer over the phone (although he normally would not do so on a recorded prison line), or that he may have spoken to Bannout about the second offer just before a reverse proffer session (at which time the third plea offer was already extant).

make the decisions regarding the plea offers.  The District Court said that it was "not concerned about that," because "[e]very lawyer, whether he or she be experienced or fresh out of law school, knows that it is the client's call."  COA Ex. at 84.  There is some evidence that Batchelder might have stepped a bit over the line in his representation— Batchelder's cover letter for the first plea offer states, "there are provisions in that agreement that *I will not let you sign*," Dkt. #1-1 at 2 (emphasis added), and the cover letter for the third plea offer states, "I had another round of negotiations as I did not like the stipulation in the last agreement that you knew a gun was brandished, that someone was restrained, and that you were a manager.  *I refused to stipulate* to these items."  Dkt. #1-1 at 4 of 47 (emphasis added).  But we do not find this evidence strong enough to require a finding that Batchelder *coerced* Bannout into a decision, or that he failed to abide by Bannout's wishes.

For these reasons, we will affirm the District Court's judgment.  We address the parties' pending motions in the margin.[8]

---

[8] Appellee's motion to file a supplemental appendix, App. Dkt. #51, is granted.  Bannout's motion to seal the Government's brief, App. Dkt. #61, is granted.  The Government's unredacted brief, App. Dkt. #52, as well as Bannout's motion, App. Dkt. #51, shall be sealed for a period of 25 years.  See 3d Cir. L.A.R. Misc. 106.1(c).  The Government's redacted brief, App. Dkt. #69, will remain available on the public docket.