**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

| | |
|---|---|
| CORRINE MORGAN THOMAS; DOUG THOMAS; BLU GRAHAM; RHONDA OLSON; CYRO GLAD, | No. 23-15847 |
| | D.C. No. 1:22-cv-05725-RMI |
| *Plaintiffs-Appellants*, | |
| v. | OPINION |
| COUNTY OF HUMBOLDT, California; HUMBOLDT COUNTY BOARD OF SUPERVISORS; HUMBOLDT COUNTY PLANNING & BUILDING DEPARTMENT; MIKE WILSON, Vice Chair, Board of Supervisors; REX BOHN, member, Board of Supervisors; MICHELLE BUSHNELL, member, Board of Supervisors; STEVE MADRONE, member, Board of Supervisors; JOHN H. FORD, Director, Humboldt County Planning and Building Department; NATALIE ARROYO, in her official capacity as Supervisor of Humboldt County, | |
| *Defendants-Appellees*, | |
| and | |

VIRGINA BASS, Chair, Board of
Supervisors,

        *Defendant*.

Appeal from the United States District Court
for the Northern District of California
Robert M. Illman, Magistrate Judge, Presiding

Argued and Submitted April 9, 2024
San Francisco, California

Filed December 30, 2024

Before:  Richard A. Paez and Jennifer Sung, Circuit Judges,
and Sidney A. Fitzwater,[*] District Judge.

Opinion by Judge Paez

## SUMMARY[**]

### Eighth Amendment's Excessive Fines Clause

The panel affirmed in part and reversed in part the district court's dismissal of a putative class action brought

---

[*] The Honorable Sidney A. Fitzwater, United States District Judge for the Northern District of Texas, sitting by designation.

[**] This summary constitutes no part of the opinion of the court.  It has been prepared by court staff for the convenience of the reader.

by residents of Humboldt County pursuant to 42 U.S.C. § 1983, alleging, in part, that the County's system of administrative penalties and fees pertaining to cannabis abatement violates the Eighth Amendment's Excessive Fines Clause.

Pursuant to the County Code, illegal cultivation of cannabis can carry a daily fine of anywhere between $6,000 and $10,000. Once the County's Code Enforcement Unit serves a responsible party with a notice of violation ("NOV"), the party has ten days to abate all violations or face penalties, subject to an appeals process, during which the penalties continue to accrue. Plaintiffs contend that the County charges landowners with violations based on imprecise data, or on the conduct of previous property owners. The district concluded that because plaintiffs had yet to pay a fine, they lacked standing, the Eighth Amendment claim was unripe, and both the facial and as-applied challenges were untimely.

The panel first held that plaintiffs' claim under the Excessive Fines Clause was constitutionally ripe and that plaintiffs plausibly alleged a sufficient concrete injury to satisfy standing due to the County's imposition of penalties, even before any payment. The continued imposition of significant penalties caused plaintiffs emotional and psychological distress, and they incurred expenses attempting to abate the violations by hiring engineers to inspect their property and attorneys to defend them in hearings. Prudential ripeness considerations further counseled in favor of allowing the litigation to proceed.

The panel found that with one exception, plaintiffs' challenges under the Excessive Fines Clause were timely. The statute of limitations begins to run on a claim

(whether facial or as-applied) when a plaintiff knows or has reason to know of the actual injury, not, as the district court found, when the challenged ordinance is enacted. Plaintiffs' facial claim began to run when they received NOVs, which was the earliest point at which they could have known of the penalties at issue. Because at least some plaintiffs alleged they received their initial NOVs within two years of filing suit, the panel reversed the district court's dismissal of plaintiffs' facial challenge as untimely. Several of the named plaintiffs also appeared to have timely as-applied challenges, although plaintiff Cyro Glad's as-applied Eighth Amendment claim appeared to be untimely because he received his initial NOV nearly four years before the suit was filed and no daily penalties were imposed within the limitations period. The panel, therefore, partially reversed the district court's dismissal of the as-applied excessive fines challenges as untimely but affirmed the dismissal with respect to Cyro Glad.

Turning to the merits, the panel held that plaintiffs alleged a plausible claim for relief under the Excessive Fines Clause. Plaintiffs alleged that the administrative penalties, which can reach millions of dollars, and the County's demolition orders are punitive, not remedial. They also plausibly alleged that the fines were excessive given that (1) at least some of the plaintiffs have been charged with violations that pre-date their occupation of their respective properties; (2) the violations were inaccurately charged or were the fault of previous property owners; (3) lesser penalties could accomplish the same health and safety goals; and (4) the alleged offenses caused no harm beyond a technical lack of compliance with the County's cannabis permitting regulations.

**COUNSEL**

Jared McClain (argued), Institute for Justice, Arlington, Virginia; Robert Johnson, Institute for Justice, Shaker Heights, Ohio; Thomas V. Loran III, Pillsbury Winthrop Shaw Pittman LLP, San Francisco, California; Derek M. Mayor, Pillsbury Winthrop Shaw Pittman LLP, Sacramento, California; for Plaintiffs-Appellants.

Pamela K. Graham (argued), Colantuono Highsmith & Whatley PC, Pasadena, California; John A. Abaci, Colantuono Highsmith & Whatley PC, Sonoma, California; Michael G. Colantuono, Colantuono Highsmith & Whatley PC, Grass Valley, California; for Defendants-Appellees.

Thomas Q. Swanson, Hilgers Graben PLLC, Lincoln, Nebraska, for Amicus Curiae Daniel J. Altstatt.

**OPINION**

PAEZ, Circuit Judge:

This putative class action arises out of Humboldt County's system of administrative penalties and fees involving cannabis abatement. Plaintiffs—residents of Humboldt County—filed this action under 42 U.S.C. § 1983, alleging a number of constitutional claims against the County. The district court dismissed all claims in their entirety on various grounds. We focus only on one of Plaintiffs' claims: that the County's system of administrative penalties and fees violates the Eighth Amendment's

Excessive Fines Clause.[1]   The district court dismissed that claim because it concluded that the claim was not justiciable and that it was untimely.  For the reasons below, we affirm in part, reverse in part, and remand for further proceedings.

## I.  Background

### A.

This case concerns Humboldt County's enforcement of its local building and zoning laws, specifically those involving cannabis abatement.   We briefly discuss the relevant provisions of the Code of Humboldt County, California ("HCC" or "the County Code").

Pursuant to the County Code, violations of local building and zoning laws are classified into four categories ranging from "Category 1" to "Category 4."  HCC §§ 352-3(e)-(h). Those violations classified as Category 4 are the most severe and carry the greatest penalty: a daily fine of anywhere between $6,000 and $10,000.  *Id*. § 352-6(a)(4).  As relevant here, the illegal cultivation of cannabis, as well as any other violation that facilitates the illegal cultivation of cannabis, is classified as a Category 4 offense.  *Id*. § 352-3(h).

The County's Code Enforcement Unit is responsible for enforcement.  *Id*. § 352-3(j).  Once the Code Enforcement Unit determines that a violation has occurred, it serves each "Responsible Party" with a "Notice of Violation [(NOV)] and Proposed Administrative Civil Penalty."  *Id*. § 352-7. The County Code requires the NOV to contain certain information, including the name and last known address of

---

[1] In a separately filed memorandum disposition, we address Plaintiffs' remaining claims.

each responsible party and a "description of the specific acts or omissions that gave rise to the Violation." *Id*. § 352-8.

A responsible party who is served with an NOV must abate the violations within ten days or face penalties. *Id*. § 352-5(b)(1).[2] Indeed, pursuant to the County Code, fines are imposed automatically no later than ten days after service of the NOV. *Id*. §§ 352-3(m)(1), 352-5(b)(1). Moreover, in the case of "subsequent or ongoing cannabis Violations or Violations that exist as a result of or to facilitate illegal cultivation of cannabis, the imposition of administrative civil penalties will start to accrue after service of [an NOV]," unless a tenant (rather than the property owner) is in possession of the property. *Id*. § 352-3(m)(2). The imposition of the "penalty" becomes "final" and the Code Enforcement Unit "acquire[s] jurisdiction to collect the full amount thereof and any and all Administrative Costs and/or Attorney's Fees" ten calendar days after service of the NOV unless a responsible party timely appeals. *Id*. § 352-8(l).

If a responsible party appeals "the determination that . . . a Violation has occurred and/or the amount of the administrative civil penalty [imposed] . . . , the Code Enforcement Unit shall set the matter for hearing before [a] Hearing Officer and serve a 'Notice of Administrative Civil Penalty Appeal Hearing' upon each Appellant." *Id*. § 352-9. The hearing must be scheduled "no sooner than fifteen (15) calendar days after the date on which the Notice of Administrative Civil Penalty Appeal Hearing is served on

---

[2] The County is authorized to issue an additional NOV and impose an additional penalty if the violations remain after ninety days. HCC § 352-5(d). It can additionally "withhold issuance of any licenses, permits and other entitlements to a Responsible Party on any project that is subject to unpaid administrative civil penalties." *Id*. § 352-5(e).

the Appellant." *Id*. § 352-11. The imposition of fines, however, does not stop during this period, and can continue "up to and including the ninetieth (90th) calendar day," *id*. § 352-5(a), following the original "Imposition Date," *id*. § 352-3(m).

On appeal, the hearing officer has the authority to determine that no violation has occurred and terminate the administrative proceedings. *Id*. § 352-12. If the hearing officer determines that a violation has occurred or continues to exist, they can affirm the civil penalty or reduce it in limited circumstances. In no event, however, can the hearing officer reduce the penalty "to an amount that is less than the minimum amount set forth [in the County Code] for the Violation category imposed." *Id*. § 352-12(b). For example, in the case of Category 4 offenses, the reduction cannot result in a penalty lower than $6,000 per day. *Id*. § 352-6(a)(4). Once the hearing officer's decision is final, the responsible party may seek judicial review. *Id*. § 352-13.

Finally, once jurisdiction to collect the administrative civil penalty is final, the Code Enforcement Unit may serve the responsible party with a "Notice of Administrative Civil Penalty Assessment" and collect the penalty or impose a lien on the property, *id*. §§ 352-15, 352-16(l), unless the responsible party objects and requests additional review by the County's Board of Supervisors, *id*. § 352-16(i).

## B.

Plaintiffs are residents of Humboldt County who allege that they have been aggrieved by the County's enforcement of its cannabis-abatement regulatory scheme. In general, Plaintiffs allege that the County charges landowners with violations of the County Code on the basis of (1) imprecise images taken from satellites or drones without reasonable

suspicion or any further investigation, or (2) the conduct of previous owners, which ceased before Plaintiffs purchased their respective properties.  Plaintiffs also allege that the County fails to record the violations of previous owners, such that new landowners like Plaintiffs have no actual or constructive knowledge of ongoing violations when they purchase land.  The County nonetheless serves these landowners with vague NOVs that fail to properly inform them of the grounds for the charges or their right to appeal. Once served with an NOV, Plaintiffs allege that landowners face "immediate costs and immense pressure to settle due to the County's issuance of ruinous fines unsupported by any legitimate governmental interest, its refusal to drop baseless charges, its undue delay in providing hearings, its denial of permits while abatements are pending, and the cost the County imposes to prove one's innocence."

In October 2022, Plaintiffs filed this action on behalf of themselves and others similarly situated in the district court. As relevant here, Plaintiffs allege that the County's system of administrative penalties and fees with respect to cannabis abatement violates the Excessive Fines Clause of the Eighth Amendment.  After Plaintiffs filed an amended complaint, the County moved to dismiss under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6).  The County also requested judicial notice of over 500 pages of documents, which the court granted.[3]

---

[3] Plaintiffs assert that the district court improperly relied on facts it took from documents it judicially noticed.  Because Plaintiffs' allegations in their amended complaint are sufficient to conclude that their claim is justiciable, we do not address the propriety of the district court's judicial-notice ruling.

The district court granted the County's motion to dismiss. The district court reasoned that "the [Complaint was] overwhelmingly dominated by legal arguments couched as factual allegations, unreasonable inferences, unwarranted deductions, conclusory assertions, unjustified labels, and hyperbole." With respect to the Plaintiffs' claim under the Excessive Fines Clause of the Eighth Amendment, the district court concluded first that Plaintiffs' claim was not justiciable because Plaintiffs lacked standing and the claim was unripe, and second that their claim was untimely. This appeal followed.

## II. Jurisdiction and Standard of Review

We have jurisdiction under 28 U.S.C. § 1291. Dismissals under Rule 12(b)(1) are reviewed de novo. *See Erickson v. Desert Palace*, *Inc.*, 942 F.2d 694, 694 (9th Cir. 1991). "[W]hen standing is challenged on the basis of the pleadings, we accept as true all material allegations of the complaint, and . . . construe the complaint in favor of the complaining party." *Pennell v. City of San Jose*, 485 U.S. 1, 7 (1988) (internal quotation marks and citation omitted).

A dismissal under Rule 12(b)(6) is also reviewed de novo. *See Moore v. Mars Petcare US, Inc.*, 966 F.3d 1007, 1016 (9th Cir. 2020). At the motion to dismiss stage, "[a]ll allegations of material fact in the complaint are taken as true and construed in the light most favorable to Plaintiffs." *Id.* (citing *Williams v. Gerber Prods. Co.*, 552 F.3d 934, 937 (9th Cir. 2008)).

## III. Discussion

The district court determined that Plaintiffs' claim under the Excessive Fines Clause of the Eighth Amendment was not justiciable as well as untimely. We therefore first

determine whether Plaintiffs' claim is justiciable—specifically, that at least one named plaintiff in the putative class has standing to bring such a claim and that the claim is ripe—and then determine whether the claim is timely.[4]  We then consider whether Plaintiffs plausibly allege that the County's system of administrative penalties and fees violates the Eighth Amendment.  For the reasons below, we conclude that (1) at least one plaintiff has standing and their claim is ripe; (2) with one exception, Plaintiffs' claims are timely; and (3) Plaintiffs have plausibly alleged a violation of the Excessive Fines Clause.

## A. Standing and Ripeness

The County contends that the Excessive Fines Clause claim is not ripe because Plaintiffs have yet to pay a fine. The district court, for the same reason, held that all Plaintiffs lacked an injury-in-fact under Article III.  We conclude that Plaintiffs' claim is indeed ripe and that they have suffered a cognizable injury.[5]

"[S]tanding is an essential and unchanging part of the case-or-controversy requirement of Article III."  *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992).  Its "injury in fact" prong requires a plaintiff to demonstrate an "invasion of a legally protected interest that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical."  *Id.* at 560 (cleaned up).  A related doctrine, ripeness, is "drawn both from Article III limitations on

---

[4] *See Bates v. United Parcel Serv., Inc.*, 511 F.3d 974, 985 (9th Cir. 2007) (en banc) ("In a class action, standing is satisfied if at least one named plaintiff meets the requirements.").

[5] Because the County argues—as the district court determined—only that the allegations in the amended complaint do not establish that they have suffered any injury, we focus on the injury-in-fact prong of standing.

judicial power and from prudential reasons for refusing to exercise jurisdiction." *Reno v. Cath. Soc. Servs., Inc.*, 509 U.S. 43, 57 n.18 (1993). The ripeness doctrine is designed to "separate matters that are premature for review because the injury is speculative and may never occur from those cases that are appropriate for federal court action." *Portman v. Cnty. of Santa Clara*, 995 F.2d 898, 902 (9th Cir. 1993) (citation omitted). As a result, "[t]he constitutional component of the ripeness inquiry is often treated under the rubric of standing and, in many cases, ripeness coincides squarely with standing's injury in fact prong." *Thomas v. Anchorage Equal Rts. Comm'n*, 220 F.3d 1134, 1138 (9th Cir. 2000) (en banc). In addition, the ripeness doctrine has a prudential aspect "guided by two overarching considerations: the fitness of the issues for judicial decision and the hardship to the parties of withholding court consideration." *Id.* at 1141 (internal quotation marks and citation omitted).[6]

Here, in arguing that Plaintiffs' alleged injury is speculative because the fines have not yet been paid, the County effectively challenges Plaintiffs' ability to demonstrate an actual injury as well as ripeness. *See Wolfson v. Brammer*, 616 F.3d 1045, 1058 (9th Cir. 2010) ("Whether framed as an issue of standing or ripeness, the inquiry is largely the same: whether the issues presented are

---

[6] The Supreme Court has "cast doubt on the prudential component of ripeness in *Susan B. Anthony List v. Driehaus*, [573 U.S. 149 (2014)]." *Safer Chems., Healthy Fams. v. U.S. Env't Prot. Agency*, 943 F.3d 397, 412 n.8 (9th Cir. 2019) (quoting *Clark v. City of Seattle*, 899 F.3d 802, 809 n.4 (9th Cir. 2018)). Nonetheless, we consider the issue for the sake of thoroughness.

'definite and concrete, not hypothetical or abstract.'" (quoting *Thomas*, 220 F.3d at 1139).

To begin, the Eighth Amendment provides: "Excessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted." U.S. Const. amend. VIII. Although we have not previously considered constitutional ripeness and the actual injury requirement in the context of the Excessive Fines Clause, we have addressed the issue in other cases involving the Eighth Amendment. For example, in *18 Unnamed John Smith Prisoners v. Meese*, 871 F.2d 881 (9th Cir. 1989), we considered whether a correctional facility's decision to "double bunk" inmate-participants in the Department of Justice's Witness Protection Program constituted infliction of cruel and unusual punishment in violation of the Eighth Amendment. *Id.* at 882. In so doing, we recognized that "[o]ne does not have to await the consummation of threatened injury to obtain preventive relief. If the injury is certainly impending, that is enough." *Id.* at 883 (alteration in original) (quoting *Thomas v. Union Carbide Agric. Prods. Co.*, 473 U.S. 568, 581 (1985)). We nonetheless held that the inmates' Eighth Amendment claim was too speculative because (1) there was "no evidence of a concrete injury caused by actual overcrowding, intolerable conditions, . . . and the like," and (2) we could not "conjecture with any reasonable measure of assurance what impact the proposed double bunking would have on the inmates." *Id.* In other words, the inmates' claims involved "contingent future events that may not occur as anticipated, or indeed not occur at all." *Id.*

Here, by contrast, the factors identified in *18 Unnamed John Smith Prisoners* counsel in favor of actual injury and constitutional ripeness. First, there are clear and concrete

injuries stemming from the imposition of the penalties. Taking Plaintiffs' factual allegations as true and drawing all reasonable inferences in their favor, the continued imposition of such significant penalties[7] has already caused Plaintiffs emotional and psychological distress. Plaintiffs also allege significant financial uncertainty because of these penalties, which the County does not dispute. These alleged injuries are sufficiently concrete to confer standing and establish that Plaintiffs' claim is ripe. *See Chaudhry v. City of Los Angeles*, 751 F.3d 1096, 1109 (9th Cir. 2014) (recognizing emotional distress as a concrete and cognizable injury); *Robins v. Spokeo, Inc.*, 867 F.3d 1108, 1117 (9th Cir. 2017) (holding that allegations of "anxiety, stress, concern, and/or worry about [the plaintiff's] diminished employment prospects" presented concrete, cognizable injuries); *Krottner v. Starbucks Corp.*, 628 F.3d 1139, 1142 (9th Cir. 2010) (holding that "generalized anxiety and stress" can be sufficient to confer standing). Plaintiffs also allege that in the face of continuously imposed fines, they have spent money attempting to abate the violations by hiring engineers to inspect their property as well as attorneys to defend them in hearings. *See, e.g.*, *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 414 n.5 (2013) (recognizing standing where there is "a substantial risk that the harm will occur, which may prompt plaintiffs to reasonably incur costs to mitigate or avoid that harm") (internal quotation marks and citation omitted)).

Second, unlike in *18 Unnamed John Smith Prisoners*, we can determine with reasonable certainty the impact of the penalties on Plaintiffs. Plaintiffs allege that the County

---

[7] At the upper end, Plaintiffs allege that the penalties imposed by the County can reach millions of dollars.

holds new owners responsible for violations and corresponding fines that were based on a prior owner's conduct. The amounts of the daily penalties are readily ascertainable from the number of days that have passed since the original imposition date. There is an objectively reasonable likelihood that these substantial penalties, which have already been imposed, financially burden Plaintiffs because Plaintiffs will have to pay them in full or settle with the County to avoid paying penalties they cannot afford. Thus, Plaintiffs have sufficiently alleged a concrete injury, and their Eighth Amendment claim is ripe.[8]

Decisions from our sister circuits addressing constitutional ripeness under the Excessive Fines Clause support our conclusion. The leading case is *Cheffer v. Reno*, 55 F.3d 1517 (11th Cir. 1995), which relied on our decision in *18 Unnamed John Smith Prisoners* to conclude that "challenges under the Excessive Fines Clause are . . . generally not ripe until the actual, or impending,

---

[8] In reaching the opposite conclusion, the district court relied on several other reasons purportedly demonstrating that Plaintiffs' alleged injuries were too speculative. For example, the court suggested that certain plaintiffs—specifically, Corinne and Doug Thomas—did not have standing because the previous owners of their properties were named as responsible parties, not the Thomases. Although the NOV attached to the Thomases' land was addressed to the previous owners, the Thomases specifically allege that, even after contacting the County and informing them that they were the new owners, the County has nonetheless held them responsible for the penalties. Moreover, the County Code itself defines a "Responsible Party" as "Any Owner, Beneficial Owner, [or] person . . . who has caused, permitted, *maintained*, conducted or otherwise allowed a Violation to occur." HCC § 352-3(s) (emphasis added). Based on this information, and drawing all reasonable inferences in the Thomases' favor, the Thomases have plausibly alleged that the penalties were directed at them.

*imposition* of the challenged fine." *Id.* at 1523 (emphasis added); *cf. Club Madonna, Inc. v. City of Miami Beach*, 924 F.3d 1370, 1381 (11th Cir. 2019) (agreeing that a claim is not ripe because the plaintiff "does not allege that the City imposed a fine under that provision or that the imposition of a fine is immediately forthcoming"). Under this standard, Plaintiffs' Eighth Amendment claim is ripe. Under the plain terms of the County Code, the penalties *have* been imposed. *See* HCC § 352-3(m).

Moreover, the very reason the court in *Cheffer* found the claim unripe is not at issue here. In *Cheffer*, the plaintiffs alleged that they "*may* be arrested and convicted under [the relevant statute] and, if so, that they *may* be subject to the maximum imprisonment and civil penalties." 55 F.3d at 1524 (emphases added). As a result, the Eleventh Circuit concluded that the plaintiffs' "allegations amount[ed] to mere speculation about contingent future events." *Id.* Here, by contrast, Plaintiffs allege that they *have* been charged with violating the County Code, the daily fine has *automatically* accrued, and the County has reiterated on multiple occasions that Plaintiffs are responsible for paying the fine, thereby reducing the speculative nature of their injury.

In response, the County raises two arguments. First, the County suggests that the availability of an appeal hearing to contest the violation, before any penalty must be paid, indicates that Plaintiffs' allegations about the penalty "amount to mere speculation about contingent future events." *Cheffer*, 55 F.3d at 1524. And second, the County suggests that the authority of a hearing officer and other administrative and judicial officers to reduce a penalty underscores the contingent nature of the penalties. These arguments are unconvincing.

First, these arguments cannot change the fact that, by the time a responsible party obtains an administrative hearing—which, as Plaintiffs allege, can take years—the penalty will already have been imposed. And, unless a hearing is requested within ten days of service of the NOV, there will be no administrative review before the penalty becomes collectable. *See* HCC § 352-8(l)(i).

Second, given Plaintiffs' numerous allegations that the County has found them responsible and will not remove the penalties, there are fewer possible contingencies that could render Plaintiffs' alleged injuries speculative. *See In re Coleman*, 560 F.3d 1000, 1005 (9th Cir. 2009) ("But plan completion is a single factual contingency—not a 'series of contingencies' rendering the decision 'impermissibly speculative.'" (quoting *Portland Police Ass'n v. City of Portland*, 658 F.2d 1272, 1273-74 (9th Cir. 1981))). Plaintiffs do not need to demonstrate that it is "literally certain" that the harms they identify will materialize; therefore, the mere possibility that a hearing officer could determine that the penalties imposed were not warranted does not render Plaintiffs' alleged injuries speculative. *Clapper*, 568 U.S. at 414 n.5.

Third, assuming that a hearing officer does not terminate the proceedings, the officer's discretion to reduce any penalties is limited. Indeed, according to the County Code, the hearing officer cannot reduce the penalty below the minimum amount set by the Code for the category of violation. HCC § 352-12(b). Here, cannabis-related offenses are classified as Category Four violations and carry a minimum penalty of $6,000 per day. *Id*. § 352-6. And because Plaintiffs allege that even this minimum amount is excessive, the hearing officer's discretionary authority to

reduce the fine to that amount does not make Plaintiffs' injuries contingent on the hearing officer's decisions.[9]

And fourth, as a factual matter, Plaintiffs' allegations cast doubt on the impartiality of the hearing officers. Indeed, Plaintiffs allege that the hearing officers are biased, such that Plaintiffs seem all but certain to face the penalty, even if they pursue an administrative hearing.

Our conclusion that Plaintiffs have standing to challenge the penalties already imposed upon them—but before payment—aligns with our precedents in other pre-enforcement standing and ripeness cases. In *Los Angeles Haven Hospice, Inc. v. Sebelius*, the plaintiff "was the object of [a] governmental action," specifically, "an individualized demand for repayment of over $2.3 million." 638 F.3d 644, 655 (9th Cir. 2011). We held that this alone was sufficient to establish a concrete injury. *Id.*; *see Susan B. Anthony List*, 573 U.S. at 159 (recognizing that a "plaintiff satisfies the injury-in-fact requirement" where "'there exists a credible threat'" that the government will enforce the challenged law (quoting *Babbitt v. United Farm Workers Nat'l Union*, 442 U.S. 289, 298 (1979)); *see also Babbitt*, 422 U.S. at 298 (recognizing that plaintiffs "should not be required to await and undergo criminal prosecution as the sole means to seeking relief" (quotation omitted)). Similarly, in *Hotel Employees & Restaurant Employees International Union v. Nevada Gaming Commission*, we held that "[w]here the

---

[9] The County points to cases where courts have reduced fines, citing for example *County of Humboldt v. Appellate Division of Superior Court*, 46 Cal. App. 5th 298, 304-05 (2020). As Plaintiffs argue, however, "[t]hat a court went beyond the text of the law to reduce mandatory fines worth more than a property's value does not preclude Plaintiffs from bringing an Eighth Amendment challenge to the penalties they face."

agency has threatened enforcement, the actual commencement of administrative enforcement proceedings is not necessary" to establish ripeness for a facial challenge to a regulatory system. 984 F.2d 1507, 1513 (9th Cir. 1993) (citing *Pac. Gas & Elec. Co. v. State Energy Res. Conserv. & Dev. Comm'n.*, 461 U.S. 190, 201 (1983)); *see also Freedom to Travel Campaign v. Newcomb*, 82 F.3d 1431, 1435 (9th Cir. 1996) (similar).

Finally, prudential ripeness considerations also counsel in favor of allowing the litigation to proceed. As we observed in *Engquist*, prudential "[r]ipeness analysis has two prongs: the fitness of the issue for judicial review and the hardship to the parties if review is withheld." *Engquist v. Oregon Dep't of Agric.*, 478 F.3d 985, 1000 n.11 (9th Cir. 2007), *aff'd* 553 U.S. 591 (2008). With respect to the "fitness" prong, we concluded that the constitutional challenges in that case "easily satisf[ied] both prongs of the ripeness test, as the issues presented are purely legal and delay will cause unnecessary hardship." *Id.* Here, the issues are also purely legal, and at the motion to dismiss stage, we take the allegations in the amended complaint as true.

Likewise, Plaintiffs have sufficiently alleged that delay in adjudication will cause hardship. For example, Plaintiffs allege that the County's conduct has resulted in such coercive force that several of the named plaintiffs have needed to "modify [their] behavior to avoid future adverse consequences." *Ohio Forestry Ass'n, Inc. v. Sierra Club*, 523 U.S. 726, 734 (1998). Plaintiffs also allege that the County has used and will continue to impose penalties to coerce putative class members into undesirable settlements. Plaintiffs finally allege that the unique nature of this administrative penalty scheme causes even more fines and administrative fees to accrue over time. *Cf. id.* at 733

(suggesting that hardship can be demonstrated when the provisions challenged "subject [the plaintiffs] to any civil or criminal liability").

In sum, taking Plaintiffs' factual allegations as true and drawing all reasonable inferences in their favor, they have plausibly alleged a concrete injury as a result of the County's imposition of penalties, even before any payment. We therefore conclude that Plaintiffs' claim under the Excessive Fines Clause is ripe.

### B. Timeliness

"Section 1983 does not contain its own statute of limitations." *Flynt v. Shimazu*, 940 F.3d 457, 461 (9th Cir. 2019) (quoting *Butler v. Nat'l Comm. Renaissance of Cal.*, 766 F.3d 1191, 1198 (9th Cir. 2014)). "Instead, claims brought under § 1983 are subject to the forum state's statute of limitations for personal injury suits." *Id.* (citation omitted). In California, "the relevant period is two years." *Id*. (citing Cal. Civ. Proc. Code § 335.1). "Although state law determines the length of the limitations period, federal law determines when a civil rights claim accrues." *Knox v. Davis*, 260 F.3d 1009, 1013 (9th Cir. 2001) (internal quotation marks and citation omitted). "A claim may be dismissed as untimely pursuant to a 12(b)(6) motion only when the running of the statute of limitations is apparent on the face of the complaint." *United States ex rel. Air Control Techs., Inc. v. Pre Con Indus., Inc.*, 720 F.3d 1174, 1178 (9th Cir. 2013) (cleaned up). The district court concluded that both Plaintiffs' facial and as-applied Eighth Amendment claims were untimely. We disagree.

First, the district court erred in dismissing Plaintiffs' facial challenge because it was not brought within two years of the law's enactment. The district court reasoned under

*Action Apartment Ass'n, Inc. v. Santa Monica Rent Control Bd.*, 509 F.3d 1020 (9th Cir. 2007), that all facial challenges against a local ordinance must be brought within two years of its enactment. As Plaintiffs correctly argue, however, we expressly rejected such a reading in *Scheer v. Kelly*, 817 F.3d 1183, 1187 (9th Cir. 2016). There, we recognized that *Action Apartment Ass'n, Inc.* applied only in the context of injury to property where "the very enactment of the statute [at issue] has reduced the value of the property or has effected a transfer of a property interest." *Id.* (quoting *Guggenheim v. City of Goleta*, 638 F.3d 1111, 1119 (9th Cir. 2010) (en banc)). By contrast, the statute of limitations begins to run on a claim (whether facial or as-applied) when a plaintiff "knows or has reason to know of the actual injury," not when the challenged ordinance was enacted. *Id.* at 1188 (quoting *Lukovsky v. City & Cnty. of San Francisco*, 535 F.3d 1044, 1051 (9th Cir. 2008)).

At the earliest, Plaintiffs' facial claim under the Excessive Fines Clause began to run when they received NOVs, the earliest point at which they could have known of the penalties at issue. Because at least some plaintiffs, for example the Thomases, allege they received their initial NOVs within two years of filing suit, we reverse the district court's dismissal of Plaintiffs' facial challenge as untimely.

Second, several of the named Plaintiffs appear to have timely as-applied challenges. The Thomases allege that they received their initial NOVs within the limitations period, so their as-applied challenge is timely. Although Rhonda Olson alleges that she received her initial NOVs shortly before the limitations period, she could nonetheless demonstrate timeliness in several ways. For example, because the NOVs were addressed to a different property owner, she may be able to prove that she did not know or

have reason to know *she* was subject to these penalties until later. The running of the statute of limitations is thus not apparent on the face of the complaint. *See Air Control Techs.*, 720 F.3d at 1178.

Additionally, even assuming that Olson should have known of her injury when she received the initial NOVs, the County continued to impose penalties associated with those NOVs during the limitations period. "When the continued enforcement of a statute inflicts a continuing or repeated harm, a new claim arises (and a new limitation period commences) with each new injury." *Flynt*, 940 F.3d at 462. In the excessive fines context, each imposition of a challenged fine is a new, distinct injury. *See* U.S. Const. amend. VIII (prohibiting "excessive fines *imposed*" (emphasis added)); *cf. Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 113 (2002) ("Each discrete discriminatory act starts a new clock for filing charges alleging that act."). Because Olson alleges that the County imposed penalties on her well into the limitations period, and each imposition was a new unlawful act, Olson's as-applied challenge is not time-barred.

Finally, Olson may be able to prove that she was subject to a distinct unlawful act when, within the limitations period, the County issued a new NOV in her name, reimposing penalties after she disputed their basis. "Rather than being the inevitable consequence of an earlier decision [to issue the initial NOV], this decision [to issue a new NOV] was [plausibly] the result of 'independent consideration,'" and is therefore separately actionable. *RK Ventures, Inc. v. City of Seattle*, 307 F.3d 1045, 1061 (9th Cir. 2022) (quoting *Knox*, 260 F.3d at 1014). We reverse the district court's dismissal of the Thomases's and Olson's as-applied claims as untimely.

Plaintiff Cyro Glad's as-applied Eighth Amendment claim, however, appears to be untimely, even reading his complaint with the required liberality. Glad received his initial NOV nearly four years before this suit was filed and no daily penalties were imposed within the limitations period. Further, the NOV he received was addressed to him, so there is little question that he knew or should have known he was subject to the penalties at the time he received the NOV and for the ninety days during which daily penalties were imposed. While Glad may continue to face the coercive effects of the heavy penalties, that is not enough to make his as-applied claim timely. *See, e.g.*, *Garcia v. Brockway*, 526 F.3d 456, 462 (9th Cir. 2008) ("[A] continuing violation is occasioned by continual unlawful acts, not by continual ill effects from an original violation." (quoting *Ward v. Caulk*, 650 F.3d 1144, 1147 (9th Cir. 1981)). We therefore affirm the district court's order dismissing Glad's as-applied excessive fines claim as untimely.

## C. Plausible Claim

Next, we turn to whether Plaintiffs allege a plausible claim for relief under the Excessive Fines Clause.[10] Notably, our court has extended the protections of the Excessive Fines Clause to local penalties, fines, and fees. *See Pimentel v. City of Los Angeles* ("*Pimentel I*"), 974 F.3d 917, 922 (9th Cir. 2020); *see also Pimentel v. City of Los*

---

[10] The district court did not address whether Plaintiffs had alleged a plausible claim under the Excessive Fines Clause. Because our review is de novo and the issue is purely legal, we exercise our discretion to address it in the first instance. *See AMA Multimedia, LLC v. Wanat*, 970 F.3d 1201, 1214 (9th Cir. 2020) (quoting *Raich v. Gonzales*, 500 F.3d 850, 868 (9th Cir. 2007)).

*Angeles* ("*Pimentel II*"), 115 F.4th 1062, 1065 (9th Cir. 2024). "To determine whether a fine is grossly disproportional to the underlying offense, four factors are considered: (1) the nature and extent of the underlying offense; (2) whether the underlying offense related to other illegal activities; (3) whether other penalties may be imposed for the offense; and (4) the extent of the harm caused by the offense." *Pimentel I*, 974 F.3d at 921. We conclude that Plaintiffs have plausibly alleged that the County's system of administrative penalties and fees violates the Excessive Fines Clause.

Plaintiffs allege that the penalties are clearly punitive, not remedial as argued by the County. As Plaintiffs allege, administrative penalties imposed by the County can reach millions of dollars. In the case of Olson, for example, the imposed penalty dwarfs the value of her property. And even if the penalties serve *some* remedial purpose, the Supreme Court has rejected, on a similar basis, the argument that such penalties are not punitive. *See United States v. Bajakajian*, 524 U.S. 321, 329 (1998) ("Although the Government has asserted a loss of information regarding the amount of currency leaving the country, that loss would not be remedied by the . . . confiscation of respondent's $357,144."); *see also Pimentel II*, 115 F.4th at 1067 (noting that only "purely remedial sanctions" are not subject to Eighth Amendment scrutiny).

With respect to the four factors identified in *Pimentel*, Plaintiffs have plausibly alleged that the fines at issue here are excessive. To assess the first factor, "[c]ourts typically look to the [alleged] violator's culpability." *Pimentel I*, 974 F.3d at 922. That is, "if culpability is low, the nature and extent of [their] violation is minimal." *Id.* "It is critical, though, that the court review the specific actions of the

violator rather than by taking an abstract view of the violation." *Id.* Here, the underlying offense is a property offense related to cannabis cultivation. More importantly, and considering the specific actions of the alleged violators, the amended complaint alleges that at least some of the plaintiffs have been charged with County Code violations that pre-date their occupation of their respective properties. At the time of their purchase and since then, Plaintiffs allege that the property was not used and has not been used for any cannabis cultivation or operation. In such cases, the nature and extent of the alleged violations are minimal. Indeed, even if plaintiffs like Olson were aware that the property had some past association with cannabis cultivation, Olson alleges that she was not aware of outstanding County Code violations because the County—contrary to the Code—failed to record the violations against the properties. HCC § 352-4(c).

Turning to the remaining factors, the second factor—"whether the underlying offense relates to other illegal activities"—supports Plaintiffs, even if the underlying offense is related to cannabis cultivation. *Pimentel I*, 974 F.3d at 923. Plaintiffs have plausibly alleged that such violations are either inaccurately charged or the fault of previous property owners. Likewise, the third factor—"whether other penalties may be imposed for the violation"—weighs in Plaintiffs' favor, as the permitting violations would carry a smaller fine if not for the tenuous nexus to cannabis, elevating the violations to Category 4 violations. *Id.* Moreover, it seems clear to us that lesser penalties could accomplish the same health and safety goals, and the County offers no reason to infer otherwise. And finally, as to the fourth factor, the "extent of the harm caused by the violation," Plaintiffs have alleged that the offenses

here have caused no harm beyond a technical lack of compliance with the County's cannabis permitting regulations. *Id.* As Plaintiffs argue on appeal, "[Olson] faces millions in penalties for what is now an empty field. No harm to the community justifies those penalties." *See also Bajakajian*, 524 U.S. at 340 (noting the absence of an "articulable correlation to any injury suffered by the government"); *Pimentel II*, 115 F.4th at 1072 (requiring the City to "provide *some* evidence that the penalty amount was actually tethered to the nature and extent of the harm caused by nonpayment").

In addition, Plaintiffs have alleged that the County's demolition orders are unconstitutionally excessive penalties. Importantly, the Eighth Amendment covers civil penalties like the demolition orders at issue here. *See Austin v. United States*, 509 U.S. 602, 610 (1993) (observing that "a civil sanction that cannot fairly be said solely to serve a remedial purpose, but rather can only be explained as also serving either retributive or deterrent purposes, is punishment" (quotation omitted)). Indeed, the removal of structures on a property owner's land is effectively an *in rem* forfeiture. *See Timbs v. Indiana*, 586 U.S. 146, 154 (2019) ("[C]ivil *in rem* forfeitures fall within the Clause's protection when they are at least partially punitive." (citation omitted)).

The County argues that "[a]batement of unlawful and potentially unsafe structures (like an unpermitted and uninspected tunnel under a [building]) is remedial, not punitive." Plaintiffs respond that the demolition orders also "serve to punish and deter unpermitted cannabis cultivation." Although a closer question than the imposition of penalties, taking Plaintiffs' allegations as true and drawing all reasonable inferences in their favor, the demolition orders are at least partly punitive. Plaintiffs

allege that the orders target otherwise lawful structures simply because they once had a nexus to illegal cannabis cultivation, regardless of their effects on public health and safety.  In the absence of other justifications, it is plausible that the demolition orders—and the significant expenses they pose to owners—serve, at least in part, to punish and deter unpermitted cannabis cultivation.  Thus, for the same reasons as the penalties, Plaintiffs have plausibly alleged that the demolition orders violate the Excessive Fines Clause.

## IV.  Conclusion

Local governments are often at the forefront of addressing difficult and complex issues.  As a consequence, they undoubtedly require flexibility in their decision-making.  Nonetheless, and as we have recently observed, "[t]he government cannot overstep its authority and impose fines on its citizens without paying heed to the limits posed by the Eighth Amendment."  *Pimentel I*, 974 F.3d at 925.  With this important caveat in mind, and for the foregoing reasons, we reverse the district court's dismissal of Plaintiffs' Eighth Amendment claim and remand for further proceedings consistent with this opinion.

**REVERSED in part, AFFIRMED in part, and REMANDED for further proceedings consistent with this opinion.**

Appellants shall recover their costs on appeal.